# IN THE UNITED STATES DISTRICT COURT

# FOR EASTERN DISTRICT OF VIRGINIA

CASE NO: 1:21cv854

TONY DANE,

Petitioner,

v.



HAROLD W. CLARKE,

Director, Virginia Department of Corrections

Respondent

# WRIT OF HABEAS CORPUS

Tony Dane

Petitioner Pro Se

421 Barnfield Rd.

Haynesville, VA 22472

AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| | |
|---|---|
| **United States District Court** | District: Eastern District of Virginia |

| | | |
|---|---|---|
| **Name** (under which you were convicted): | | Docket or Case No.: |
| Tony Steven Dane | | 1:21cv854 |

| | |
|---|---|
| **Place of Confinement :** | **Prisoner No.:** |
| Haynesville Correctional Center | 1930791 |

| | |
|---|---|
| **Petitioner** (include the name under which you were convicted) | **Respondent** (authorized person having custody of petitioner) |
| Tony Dane | v. Harold W. Clarke |

The Attorney General of the State of:

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Loudoun County Circuit Court

    18 E. Market St

    Leesburg, VA 20176

    (b) Criminal docket or case number (if you know):   31352-00 to -04

2.  (a) Date of the judgment of conviction (if you know): _____

    (b) Date of sentencing:   July 12, 2008

3.  Length of sentence:   10 years

4.  In this case, were you convicted on more than one count or of more than one crime?   ☒ Yes      ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    Involuntary Manslaughter

    Driving without a license

    Uninsured vehicle

    Failure to have an inspection sticker

    reckless driving

    _____

6.  (a) What was your plea? (Check one)

    ☒ (1)   Not guilty      ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty      ☐ (4)   Insanity plea

6.   (a)   What was your plea? **Not Guilty**
     (b)   If you entered a guilty plea to one count or charge and not
           guilty plea to another count or charge, what did you plead guilty to and what did
           you plead not guilty to? **NA**
     (c)   If you went to trial, what kind of trial did you have? **Jury**

7.   Did you testify at a pretrial, or post-trial hearing? **Yes, post-trial**

8.   Did you appeal from the judgement of conviction? **Yes**

9.   If you did, answer the following:
     (a)   Name of court: **COURT OF APPEALS OF VIRGINIA**
     (b)   Docket or case number: **Record No. 1227-18-4**
     (c)   Results: **Denied**
     (d)   Date of result (if you know): **Unknown**

(e)   Citation to the case: **DANE v. COMMONWEALTH OF VIRGINIA
      RECORD NO. 1227-18-4**

(f)   Grounds raised:
      1.   Trial court erred when I found the evidence sufficient as a matter of law for conviction
           of Involuntary Manslaughter under §18.2-36. (Preserved at M19 T130-138,
           specifically M23 T 12-22, 24-25)
      2.   Trial court erred as a matter of law when it applied the wrong standard to deny
           summarily the Appellant's first Motion to Strike. (Preserved at M20 T 144)
      3.   Trial Court erred as a matter of law when it applied the wrong standard to deny
           summarily Appellant's second Motion to Strike. (Preserved at M23 T 26)

(g)   Did you seek further review by a higher state court? **Yes**
      If yes, answer the following:
      (1)   Name of court: **THE SUPREME COURT OF VIRGINIA**
      (2)   Docket or case number: **Record No. 191054**
      (3)   Results: Denied
      (4)   Date of results (if you know): **Unknown**
      (5)   Citation to be case: **THE SUPREME COURT OF VIRGINIA RECORD NO. 191054,
            TONY STEVEN DANE v. COMMONWEALTH OF VIRGINIA**
      (6)   Grounds raised:
            1.   Trial court erred when I found the evidence sufficient as a matter of law for
                 conviction of Involuntary Manslaughter under §18.2-36. (Preserved at M19
                 T130-138, specifically M23 T 12-22, 24-25)
            2.   Trial court erred as a matter of law when it applied the wrong standard to deny
                 summarily the Appellant's first Motion to Strike. (Preserved at M20 T 144)
            3.   Trial Court erred as a matter of law when it applied the wrong

standard to deny summarily Appellant's second Motion to Strike. (Preserved at M23 T 26)

(h)   Did you file a petition for certiorari in the United States Supreme Court? **No**

10.   Other than the direct appeal listed above, have you previously filed any other petitions, applications, or motions concerning this conviction in any state court? **Yes**

11.   If your answer to Question 10 was "Yes" give the following information:
   (a)   Name of Court: **Supreme Court of Virginia**
   (b)   Docket or case Number: **200794**
   (c)   Date of Filing: **June 15, 2020**
   (d)   Nature of the Proceedings: **Habeas Corpus**
   (e)   Grounds Raised:
      1.   Trial Counsel was ineffective for failure to consult with a Pathologist or Medical Expert to determine cause of death.
      2.   Trial Counsel was ineffective for failure to provide adversarial testing by not consulting an expert on the mechanics of the food truck.
      3.   Trial Counsel was ineffective for failure to review evidence with Petitioner.
      4.   Trial Counsel was ineffective for failure to review and understand the evidence presented by the prosecutor.

      5.   Trial Counsel was ineffective for failure to challenge the elements of the charge.
      6.   Trial Counsel was ineffective for failure to Investigate.
      7.   Trial Counsel was ineffective for failure to call or interview witnesses.
      8.   Trial Counsel was ineffective for failure to recuse a Juror.
      9.   Trial Counsel was ineffective for failure to *voir dire* expert witnesses.
   (f)   Did you receive a hearing where evidence was given on your petition, application, or motion? **No**
   (g)   Results: **Denied**
   (h)   Date of results: **May 19,2021**
(b)   If you filed any second petition, application, or motion, give the same information: **NA**
(c)   If you filed any third petition, application, or motion, give the same information: **NA**
(d)   Did you appeal to the highest court having jurisdiction over the action taken on your petition, application, or motion? **Yes**
(e)   If you did not appeal to the highest state court having jurisdiction, explain why you did not? **NA**

**Custody**

3

12. Petitioner is in the physical custody of the Respondent and the Virginia Department of Corrections (VDOC). Petitioner is detained at Haynesville Correctional Center in Haynesville, Virginia. Petitioner is under the direct control of Respondent and his agents.

## Jurisdiction

13. This action arises under the Constitution of the United States namely the Sixth, Eighth and Fourteenth Amendments. This Court has jurisdiction under 28 U.S.C. §2254 and 42 U.S.C §1983, as Petitioner is presently in custody under color of authority of the State of Virginia, and such custody is in violation of the Constitution of the United States, laws and treaties. This Court may grant relief pursuant to 28 U.S.C. §2254.

## Venue

14. The proper venue lies in the United States District Court for the Eastern District of Virginia, the judicial district where Petitioner currently is in custody.

## Parties

15. Petitioner, Tony Dane, a citizen of the United States currently illegally incarcerated for over 42 months. Respondent Harold W. Clarke is the Director of the Virginia Department of Corrections.

## Violation of Rights to Counsel and Resources

16. Virginia does not permit a convicted person alleging ineffective assistance of Trial Counsel to raise that claim on direct review. Instead, the prisoner must bring the claim in state collateral proceedings. Counsel is not appointed to assist the prisoner through the maze of legal minutia that only years of schooling and practicing law provides. Added to this handicap, Respondent shut down the law library which makes it nearly impossible for a prisoner to even attempt to research laws and procedures, courts rely on in stating a case. Petitioner is further blocked from legal mail when Petitioner uses resources outside the prison system. (See affidavit of Tony Dane and Jerry Littman)

It has been long established by the Supreme Court of the States since 1878, that any attempt to deprive a party from a fair hearing, violates his rights under the law. *United States v. Throckmorton* 8 Otto 61, 25 L.Ed 93 (1878) states: Where the unsuccessful party has been prevented from fully exhibiting his case, by fraud or deception, <u>as by keeping him away from court</u>... or keeping him in ignorance of the suit... <u>and in similar cases where there has never been a real contest,</u> new suit may be maintained to set aside and annul judgement or decree. (Emphasis Added)

Being prevented access to the law library and denying legal mail, is akin to denying access to the courts and stacking an already one-sided deck against your Petitioner. Throckmorton

4

continues to state: "he has been prevented from presenting all of his case to the court, by reason of which there has never been a real contest before the court of the subject-matter of the suit." The lack of adversarial testing denied Petitioner of a real contest before the court of the subject matter of the suit.

*Martinez v. Ryan* 183 L.Ed 272, 132 S.Cut.1309 (2012) States: Claims of ineffective assistance at trial often requires investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective assistance of trial counsel claim in an initial review collateral proceeding cannot rely on a court opinion or prior work of an attorney addressing that claim. To present a claim of ineffective assistance at trial in accordance with the State's procedures, a prisoner needs an effective attorney... The prisoner unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of Federal Constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record... The right to the effective assistance of counsel at trial is a bedrock principle in our justice system.... By deliberately choosing to move trial ineffectiveness claims outside of the direct appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. In this case, not only was Petitioner deprived counsel in filing this Writ of Habeas Corpus, but also denied access to the Law Library and the resources that can be found there.

## Abbreviations*

17.  H1:   Hearing conducted February 27, 2018
     TT:    Trial Transcripts
     TT1:  Dated March 19, 2018
     TT2:  Dated March 20, 2018
     TT3:  Dated March 23, 2018

     * Transcripts are quoted as TT#, page#, line[s]#

## Statement of Facts

18.      Petitioner was self-employed selling food out of his "food truck", a converted 40-foot bus (hereafter "food truck"). On Friday, September 8, 2017, Erin Kaplan was driving a car, with her mother and 3 children, south of Leesburg, Virginia, toward and through the intersection of Evergreen Mills Road and Watson Road (hereafter, "the intersection"). The food truck, driven by Petitioner and carrying two minors, his 17-year-old son and a friend sitting on barstools, struck Kaplan's vehicle after failing to stop for the stop sign. The impact (hereafter "the collision"), attendant injuries and the delay of emergency services killed Kaplan. According to witnesses, there was no immediate prior notice or warning of impending collision, (TT1, 151) and it took law enforcement and medical personal a "very long time" to

arrive. (TT1, 153, 7-9) Trial Counsel had as evidence the emergency service log, which shows all actions taken by emergency services. (See Emergency Log). It is to be noted that the call to emergency services came in at 16:48:05, it is listed as a "Major Incident". The call log is incorrect at 17:09:55 where it states "10 Min into Inc" at that point they are nearly 22 minutes into the incident. At 16:57:33 almost 10 minutes into the incident, emergency services determined that "Req Addt'l Heavy Rescue", and at 17:31:35 the first wrecker is "10 Min Eta" and at 17:32:01 "2nd wrecker with rotator 30-40 min ETA". Wreckers were needed at the scene in order to provide medical assistance to Ms. Kaplan, the food truck needed to be moved away from Kaplan's vehicle. Ms. Kaplan did not receive any emergency care far past the "Golden Hour."

19.  The "Golden Hour" is the amount of time you must get blood and other fluids to an injured person, or they will bleed out. Erin Kaplan did not receive any medical assistance in the "Golden Hour" although Kaplan was still alive when emergency services arrived, she received no medical attention and medical personal did not reach her body until after death.

20.  It was undisputed that the accident was the result of food truck brake failure, which did not allow the Petitioner to stop as he approached the intersection. The Prosecution's theory of culpability was that, while brake failure caused the accident, Petitioner caused the brake failure, and the food truck was not fit to be on the road. (TT1, 128, 13-20) The Prosecution stated that Petitioner knew there were mechanical problems with this vehicle.

21.  There was no indication that the Petitioner was under the influence of any drug or alcohol at the time of the collision. (TT1, 202, 17-22) There was no evidence that Petitioner had driven in a reckless, inattentive, hurried, or improper manner. Travel time varies by traffic and speed, but the trial court was likely aware that Front Royal is about an hour from Leesburg and evidence suggests Middleburg is 15 to 19 minutes from Leesburg on the way from Front Royal. (TT1, 214-261)

22.  The Prosecution made the point that the brakes felt spongy in Middleburg and would have had plenty of places to stop before total brake loss. The only evidence that the brakes felt spongy in Middleburg was the testimony of Deputy Michael Grimsley. The recorded statement by Tony Dane was not presented as evidence. At no time did the Petitioner state that his brakes felt spongy in Middleburg and had told this to Trial Counsel on numerous occasions. Evidence was presented that Petitioner had catastrophic brake failure minutes before the accident when he could not stop for a school bus and had to swerve. (TT1, 228) Minutes later was the resulting collision with Kaplan's vehicle.

23.  Petitioner was interrogated by law enforcement soon after the crash and made the following statements: He had driven from Front Royal that evening to sell food from his food truck at a high school football game in Ashburn. (TT1, 228). Petitioner had lived in Virginia for about 2 years. Petitioner discovered his brakes were inoperable when he attempted to stop for a school bus, around which he instead had to swerve (TT1, 228) Minutes later,

when he got to the intersection he was "unable to stop and unable to negotiate the turn, [which resulted in his] striking Kaplan's vehicle.

24.     Petitioner stated that he had put in a new brake line on Monday or Tuesday of that week when he discovered that the food truck was leaking brake fluid. (TT1,196-200) Petitioner stated that when the brakes failed, there was no safe place to run off the road, and he was concerned for the safety of the two juvenile passengers. (TT1, 196-205)

25.     There was no indication the food truck had been inspected while in Virginia. (TT1, 232, 17-20) The Prosecution made a point that the food truck was never inspected in Nevada or Colorado; making the point that the only inspection sticker was done in Utah in 2011 six years before the crash. (TT1, 141, 20-21) Petitioner informed Trial Counsel that Nevada did not have inspection stickers or inspected vehicles and the fact that the food truck was never registered in Colorado. Trial Counsel chose not to use this information.

26.     Petitioner and his two juvenile passengers were transported to the hospital where he was interrogated by a different law enforcement officer. At that time Petitioner stated the location were the brakes first felt "spongy". He informed the officer that halfway around the first turn-a-bout, is when he felt the brakes were "spongy". From that point to the accident sight there was no place for Petitioner to safely park the vehicle. Trial Counsel was told on numerous occasions by Petitioner where the brakes first felt "spongy" but made no investigation into Petitioner's claims.

27.     Deputy Petrakos, an unchallenged law enforcement expert, qualified in the field of "motor safety inspection and commercial vehicle inspection," having disassembled and examined the food truck post-collision, after it had been towed to the impound lot. (TT2, 17-18) Deputy Petrakos was never qualified as an expert in accident reconstruction, or brake systems, electrical systems, or tire blowouts, however testified in those areas. Each wheel has its own brake caliper and a hydraulic brake line leading into a caliper, and the wheels were removed so Petrakos could "get a better inspection of the caliper and the conditions." (TT2, 21) The wheels were difficult to remove, and it seemed the rim and tires "hadn't been off in a while" as rust and dust particles fell from the lug nuts. (TT2, 21-22) Petrakos "used a sledgehammer to get the rim and tire off the food truck which took quite a while." (TT2, 22, 6-15) There was no damage or collision to the rear end of the food truck.

28.     Petrakos testified that the brakes were never bled in the history of the vehicle, then later testified that a new brake line was installed prior to the brake line installed by the Petitioner. When asked if the brakes were ever bled, Petrakos answers; "There would have been some type of rounding or some type of tool mark on the bleeder valve itself, especially if it was only done a few days ago." (TT2, 31, 1-4) Then, on re-direct Petrakos was talking about a kink in a line when he describes an old, original line that has a kink and a newer line, that is older than the one installed by the Petitioner.

29.     Petitioner referred Trial Counsel to a former Superintendent of Bus Repair, who worked 20 years for a neighboring School District. This man was referred by a mutual friend and had experience with this vehicle. Trial Counsel never contacted the mutual friend to get in contact with this expert on repair of Thomas Built busses like this one.

30.     Deputy Petrakos stated that "When air is introduced into the brake system, i.e., brake line repair, you're going to introduce a lot of air into that system". (TT2, 28, 20-22) When air is introduced into the brake system, the brakes do not work. Then, Deputy Petrakos states air bubbles in the line would give braking for a while, then as the air bubbles work their way to the calibers, you will have total brake failure. (TT2, 64-67). Petrakos, stated on direct examination, "It's (the brake system) one continuous system". (TT2, 64, 5-10)

31.     The food truck had 6 tires, 2 in front, 4 in back. (TT2, 32) "Some of" the back tires "had been recently replaced." (TT2, 55). This refuted Deputy Petrakos' earlier testimony that the tires have not been removed for a long time. In the opening arguments of the Prosecution, he states, "On one side of the vehicle, there was a tire that had a 3½ inch gash, and on the other side of the vehicle, there was a tire that had an 11-inch gash. And they'll tell you that both in their inspection and their opinion were pre-crash problems." This was not the testimony of prosecution's own expert. Master Trooper Norman Goins, an unchallenged witness that works with commercial vehicle inspection, testified on the tires. Trooper Goins was not qualified as an expert on tires or blowouts.

32.     The Prosecution tried to make the argument that the food truck should have been put out of service, due to dry rot on the tires. Goins testified that, "Dry rot wouldn't fail" [inspection]. (TT2, 124, 1)

33.     On the issue of the 3½-inch gash that the Prosecution stated in his opening argument that it was "pre-crash", Goins disagreed, stating he believed it was blunt impact that caused the tire to split. (TT2, 52, 1-3)

34.     At the impound lot, Deputy Petrakos claimed the food truck's brake lights did not come on when the brake pedal was pressed, because "the brake booster... was disconnected [from its] electrical connection." (TT2, 34 & 43-44)

35.     In the opening statement from the Prosecution, he stated, "If you do not have power-steering fluid it is going to decrease steering efficiency, and it's going to be harder to make that turn.  And they'll (Deputy witnesses) talk to you about the compounding effect of not having power steering and having all the weight on the driver's left-hand side while trying to make that emergency right-hand turn."  The evidence presented showed two facts; The first is that a power steering unit is not required, which Trial Counsel highlighted, but more importantly, there was enough power steering fluid in the reservoir at the time of the collision.

36.    Deputy Petrakos testified that the power-steering fluid was at the minimum level. The Prosecution asked, "Did you make any observations in terms of the level of power steering fluid in the reservoir?" Petrakos answered, "It measured below the dipstick line, the minimum on the dipstick." The Prosecution follows with, "And what is the minimum on the dipstick supposed to represent?" Petrakos answered, "it's the minimum of power steering fluid that you can have in that unit. (TT2, 36, 2-10) Petrakos was the expert for the prosecution and testified that the level was at the minimum standard for the power steering to function properly. Prosecution called Deputy Brian Russell to testify on the power-steering unit. Russell checked the fluid level days after Petrakos and noted that he had to use his flashlight to see if any fluid was in the reservoir. Stating that there was no fluid on the dipstick. (TT2, 111, 8-10) This is contrary to Petrakos, who stated "There was power steering fluid." (TT2, 102, 8-9) Deputy Russell did however admit that power-steering is not a legal requirement. (TT2, 101, 15-20)

37.    The food truck had an automatic transmission, (TT2, 56-57) and the gear shifter was discovered to be in neutral after the collision. (TT2, 37) "Neutral" was forward of the "drive" gears on the vertical gear shifter, (TT2, 57, 9-10) in the direction items in the food truck were flung during the collision. (TT2, 230-231) "Petrakos testified that shifting the food truck while "in drive to a lower gear - but not too low - would give the engine higher RPM's and reduce the [vehicle's] speed." (TT2, 37 & 48-49) Downshifting too far, could cause "catastrophic... failure in the transmission, leaving a vehicle in 'free-drive' as though in neutral, or could 'seize' the transmission, (TT2, 50) but slowly moving from high gears to lower gears would likely avoid catastrophic transmission failure" (TT2, 73) Downshifting or engine braking is "more typically used" in manual transmissions. (TT2, 57) Petrakos stated that Petitioner did not mention downshifting during questioning.

38.    The parking or emergency brake (hereafter parking brake) was located on the floor between the driver's seat and the driver's door. (TT2, 39) The parking brake is on a "different [braking] system" than the "hydraulic braking system" (HBS) constituted by the calipers and brake lines. (TT2, 39) Pulling the parking brake "would attempt to slow the [food truck down, but] wouldn't immediately stop it." (TT2, 40) The effect of pulling the parking brake would be "very small". (TT2, 59, also see 40) Petrakos' expert opinion, a failure of the HBS would not result in "automatic failure" of the parking brake because the parking brake "has a drive line park and brake... on the driveshaft itself". (TT2, 39-40)

39.    Deputy Brian Russell testified as an expert for the Commonwealth in motor vehicle safety inspection and commercial motor vehicle inspections, based on his examination of the food truck after the collision. (TT2, 79-80). He weighed the food truck at the scene under each section of tires. (TT2, 80) A commercial vehicle is weighed under each wheel and under all wheels and can be found in violation of safety related law. (TT2, 85) After the collision, the food truck was weighed; the front left weighed 4,500 pounds; the front right 3,800 pounds; the back left 8,650 pounds; and the back right 5,050 pounds. (TT2, 88) Russell testified that

uneven weight distribution can affect "driver inputs" adversely, and that affect can magnify other vehicle issues. (TT2, 89-93)

40.     Trial Counsel put on no defense, called no witnesses, conducted no investigation, never went over the evidence with your Petitioner, nor interviewed none of the witnesses for the prosecution, except for Petrakos and Russell. Trial Counsel argued that the food truck in fact had brakes, based on a picture showing the food truck made tracks on the road. Trial Counsel referred to the tracks as "skid marks," but was quickly corrected and told they were "yaw" marks made by the vehicle attempting to make a right-hand turn and the inertia of the vehicle continuing to go straight. (TT1, 252, 10-22)

41.     The final argument made by the Prosecution to prove the second element of Involuntary Manslaughter "so gross, wanton and culpable", was that passenger seat belts were not installed in the vehicle. Prosecution states; "So that's just one piece of the puzzle leading to Criminal Negligence". (TT2, 140) Deputy Allen quoting Petitioner, "I had my son and my son's friend unrestrained on bar stools in the seat. (TT2, 139, 20-22) Allen testified that the food truck had no passenger seatbelts. (TT1, 229, 15-18 & 227, 7-11)

42.     In the Prosecution's summation, he states, "So when you look at everything involved in this case, the brakes, the weight, the power steering fluid, the brake lights, the lack of insurance, the lack of license, no seat belts, no engine braking, and no parking braking. All that, and the accumulation certainly adds up to Criminal Negligence for this jury to decide. [Emphasis Added] (TT3, 143-44, 17-1)

43.     After the first day of trial, a Juror comes forward and states that this case was on the news, and her family was watching it. The Juror states that her son comes and gets her to tell her that his bus driver is on TV. The bus driver was a witness who testified against your Petitioner. Trial Counsel did not recuse this witness; there was no request to recuse this witness. (TT2, 8-10)

44.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

## GROUNDS

## GROUND ONE: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO CONSULT WITH A PATHOLOGIST OR MEDICAL EXPERT TO DETERMINE CAUSE OF DEATH

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support you claim):
   (1)   Emergency Services was slow to get to the scene of the accident.
   (2)   Emergency Services time log was either intentionally or unintentionally inaccurate, based on:

      a.     The emergency services log was off by 12 minutes. Giving emergency services a grace period.

      b.     The log does not reflect the time when the ambulance and medical personal arrived on the scene.

      c.     The log shows the wrong equipment was sent to the scene causing further delays.

      d.     Due to the clumsy actions of emergency services, it took 3 hours to extract Erin Kaplan from the wreckage.

      e.     The actions of emergency services were covered up.

(3)     Trial Counsel admits in a letter to Petitioner that he did not understand the medical records, and no expert was called to explain them.

(4)     It has not been investigated:

      a.     How long Erin Kaplan was alive waiting for help.

      b.     If emergency services did their job properly would Erin Kaplan of survived.

(b)     If you did not exhaust your state remedies on Ground One, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)     Direct Appeal of Ground One:

(1)     If you appealed from the judgement of conviction, did you raise this issue? **No**

(2)     If you did not raise this issue in your direct appeal, explain why? **This was not an appealable issue.**

(d)     Post-Conviction Proceedings:

(1)     Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**

(2)     If your answer to Question (d)(1) is "Yes" state:

Type of motion or petition: **Writ of Habeas Corpus**

Name and location of the court where the motion or petition was filed:

**Virginia Supreme Court**
**Richmond, Virginia**

Docket or case number: **200794**

Result (attach a copy of the court's decision or order, if available): **NA**

(3)     Did you receive a hearing on your motion or petition? **No**

(4)     Did you appeal from the denial of your motion or petition? **No**

(5)     If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**

(6)     If your answer to Question (d)(4) is "Yes" state:

Name and location where the appeal was filed: **NA**

Docket or case number: **NA**

Date of the court's decision: **NA**

Result: **NA**

(7)     If your answer to Question (d)(5) is "No" explain why you did not raise this issue:

**Virginia Supreme Court is the highest authority to the State.**

(e)   Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One. **None**

**GROUND TWO: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO PROVIDE ADVERSARIAL TESTING BY NOT CONSULTING AN EXPERT ON THE MECHANICS OF THE FOOD TRUCK.**

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support you claim):

    (2)   Trial Counsel did not challenge the testimony of safety experts who testified outside the realm of their expertise.

        a.   Deputy Petrakos testified that the brakes were not bled which caused the accident. Trial Counsel was ineffective for not challenging Petrakos based on the evidence.

            1.   Petrakos lied when he stated, the brakes were never bled because there was new rounding or scratch marks on the bleeder valves. Deputy Petrakos also testified of an interim brake line that was added. Because he knew of the interim brake line, based on his testimony, he knows that would require bleeding. Rounding and scratch marks do not disappear in time. This was false. Unqualified Testimony

            2.   Deputy Pettakos lied when he stated the bleeder valves were rusted when Prosecution Exhibit 17 showed a picture of a clean bleeder valve. (See picture of Bleeder Valve)

            3.   Petrakos testified that the brakes are one continuous system, but according to the Vehicle Maintenance Manual, is two bidirectional systems. (See Thomas Built Brake Manual)

            4.   No forensic evidence was submitted to back up this false claim.

        b.   Deputy Russell testified that the left side of the vehicle was heavier than the right. Trial Counsel was ineffective for not informing the jury, that the vehicle was compliant. All food trucks are heavier on the left side. Both Respondent and the Virginia Supreme Court accepted this fact; attempts to change the argument to being unable to make a right-hand turn or not. Criminal Negligence cannot be an asset on a vehicle in compliance to acceptable norms. The design of the food truck was approved by the Warren Country Health Department and passed inspection of both the Warren County Health Department and the Warren County Fire Department. No *mens rea* can be established.

        c.   Trial Counsel was ineffective for allowing the Prosecutor to give false information to the jury, when he stated over 10 times "there was no power steering fluid in the reservoir" when Deputy Petrakos testified there was power

steering fluid in the reservoir. The Prosecutor only focused on Deputy Russell's testimony that the reservoir was empty. Russell checked the fluid after Petrakos, and it is apparent the accident caused a leak, and all the fluid leaked out. Trial Counsel was ineffective for not bringing this evidence to the jury's attention, but instead allowing the Prosecutors false information.

d. Trial Counsel was ineffective for not challenging Petrakos testimony that the brake lights did not work.
   1. The brake lights had been recently tested by A1 Truck and Trailer when they added a trailer hitch.
   2. Petrakos testimony was contrary to the vehicle's maintenance manual. (See Thomas Built Manual – Electrical and Schematics)

e. Trial Counsel was ineffective for not looking up the requirements for seat belts.
   1. Petrakos incorrectly testified that the lack of seat belts in the food truck constituted Criminal Negligence (TT2, 140)
   2. Virginia seat belt laws did not require seat belts in that vehicle, and Trial Counsel either did not know this fact, or withheld that information from the jury.
   3. Respondent and Virginia Supreme Court did not argue this fact, therefore no *mens rea*.

f. Trial Counsel was ineffective for not challenging prosecutions false claim that engine braking was not used.
   1. No forensic testing was conducted to back up this claim.
   2. The vehicle was found in neutral which backs up engine braking was attempted.
   3. The only so-called evidence used was the fact Dane never told the investigators he attempted engine braking.
   4. Trial Counsel was ineffective for not challenging this false claim.
   5. No *mens rea*.

g. Trial Counsel was ineffective for not challenging the false claim that the parking brake was not used.
   1. No forensic testing was performed on the parking brake.
   2. Forensic testing would show scorching on the brake drum.
   3. The only so-called evidence presented, was Dane never told the investigators he attempted to use the parking brake.
   4. Trial Counsel accepted this false claim without challenge.
   5. No *mens rea*.

h. Trial Counsel was ineffective by accepting non-expert testimony as to the condition of the tires.
   1. Petrakos did not receive any training in forensics, accident reconstruction, or tires, and Trial Counsel never questioned Petrakos on his training.
   2. Trial Counsel was ineffective for not having the tires inspected by experts.

i. Except for checking the level of the power steering fluid, the testimony of both Deputies Petrakos and Russell was outside their areas of expertise and was not only allowed by ineffective counsel but did not try to refute any of the evidence, even when evidence was available. Trial Counsel failed to obtain Petrakos and Russell CV. If Trial Counsel would have had any form of adversarial testing, no evidence would remain that met the false claim of Involuntary Manslaughter.

(b) If you did not exhaust your state remedies on Ground Two, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c) Direct Appeal of Ground Two:
   (1) If you appealed from the judgement of conviction, did you raise this issue? **No**
   (2) If you did not raise this issue in your direct appeal, explain why? **This was not an appealable issue.**

(d) Post-Conviction Proceedings:
   (1) Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
   (2) If your answer to Question (d)(1) is "Yes" state:
   Type of motion or petition: **Writ of Habeas Corpus**
   Name and location of the court where the motion or petition was filed:
   **Virginia Supreme Court**
   **Richmond, Virginia**
   Docket or case number: **200794**
   Result (attach a copy of the court's decision or order, if available): **NA**
   (3) Did you receive a hearing on your motion or petition? **No**
   (4) Did you appeal from the denial of your motion or petition? **No**
   (5) If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
   (6) If your answer to Question (d)(4) is "Yes" state:
   Name and location where the appeal was filed: **NA**
   Docket or case number: **NA**
   Date of the court's decision: **NA**
   Results: **NA**
   (7) If your answer to Question (d)(5) is "No" explain why you did not raise this issue:
   **Virginia Supreme Court is the highest authority to the State.**

(e) Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: **None**

**GROUND THREE: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO REVIEW EVIDENCE WITH PETITIONER.**

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support you claim): Trial Counsel promised on several occasions he would review all the evidence with Petitioner. This never happened. Petitioner was unaware seat belts, power steering fluid, engine braking, parking brake, tires or brake lights were an issue. Trial Counsel incorrectly informed Petitioner that the vehicle was overweight. The vehicle was underweight, and the issue was the left side of the vehicle being heavier than the right. Due to this false information being conveyed to the Petitioner, Petitioner could not properly inform Trial Counsel that all food trucks are heavier on the left. Due to the fact Dane was not allowed bail, he could not property inform himself and had to rely on Trial Counsel.

(b)  If you did not exhaust your state remedies on Ground Three, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)  Direct Appeal of Ground Three:
   (1)  If you appealed from the judgement of conviction, did you raise this issue? **No**
   (2)  If you did not raise this issue in your direct appeal, explain why?
        **This was not an appealable issue.**

(d)  Post-Conviction Proceedings:
   (1)  Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
   (2)  If your answer to Question (d)(1) is "Yes" state:
        Type of motion or petition: **Writ of Habeas Corpus**
        Name and location of the court where the motion or petition was filed:
        **Virginia Supreme Court**
        **Richmond, Virginia**
        Docket or case number: **200794**
        Result (attach a copy of the court's decision or order, if available): **NA**
   (3)  Did you receive a hearing on your motion or petition? **No**
   (4)  Did you appeal from the denial of your motion or petition? **No**
   (5)  If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
   (6)  If your answer to Question (d)(4) is "Yes" state:
        Name and location where the appeal was filed: **NA**
        Docket or case number: **NA**
        Date of the court's decision: **NA**
        Result: **NA**
   (7)  If your answer to Question (d)(5) is "No" explain why you did not raise this issue:
        **Virginia Supreme Court is the highest authority to the State.**

(e)  Other Remedies: Describe any other procedures (such as Habeas  Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: **None**

**GROUND FOUR: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO REVIEW AND UNDERSTAND THE EVIDENCE PRESENTED BY THE PROCECUTER.**

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support you claim):

   (1)   Trial Counsel did not understand the evidence proving the brakes were previously bled.

   (2)   Trial Counsel had no understanding of how the brake system worked and allowed false testimony that was contrary to the Vehicle Maintenance Manual.

   (3)   Trial Counsel had no understanding of the evidence presented showing the accident caused a leak in the power steering reservoir. He then allowed the Prosecutor to misrepresent the evidence on over 10 occasions.

   (4)   Trial Counsel failed to prove steering was not a factor based on the evidence; Dane swerved to avoid a school bus and the yaw marks show the wheels were turned to the right, then adding that the power steering fluid leaked out.

   (5)   Without any forensic evidence Trial Counsel allowed Deputy Petrakos to present evidence as an expert on tire reconstruction, when Petrakos had no training in tire reconstruction, accident reconstruction, or forensics of any kind.

   (6)   Trial Counsel presented at trial, a picture of tire marks at the accident. As stated, it was skid marks arguing Dane's brakes were working.  When this evidence was shown to Dane prior to trial, Dane informed Trial Counsel that he had complete brake failure and brakes could not have made those marks. Trial Counsel was corrected when he was told the marks in the picture were Yaw Marks made from the driver of the vehicle, "Dane", trying to make a right turn, where the inertia of the vehicle made the marks. This shows Trial Counsel's lack of understanding of the evidence, which the Virginia Supreme Court ruled this passed the performance test in Strictland, However, the Virginia Supreme Court failed to recognize that yaw marks are forensic evidence that steering was not a factor.

   (7)   Trial Counsel had no idea how the brake lights operated and allowed Deputy Petrakos, who has no training in the electrical system of vehicles, give false testimony that was contrary to the Vehicle Maintenance Manual.

(b)   If you did not exhaust your state remedies on Ground Four, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)   Direct Appeal of Ground Four:

   (1)   If you appealed from the judgement of conviction, did you raise this issue? **No**

   (2)   If you did not raise this issue in your direct appeal, explain why? **This was not an appealable issue.**

(d)   Post-Conviction Proceedings:

   (1)   Did you raise this issue through a post-conviction motion or petition for Habeas

Corpus in a state trial court? **Yes**

(2)     If your answer to Question (d)(1) is "Yes" state:

Type of motion or petition: **Writ of Habeas Corpus**

Name and location of the court where the motion or petition was filed:

**Virginia Supreme Court**

**Richmond, Virginia**

Docket or case number: **200794**

Result (attach a copy of the court's decision or order, if available): **NA**

(3)     Did you receive a hearing on your motion or petition? **No**

(4)     Did you appeal from the denial of your motion or petition? **No**

(5)     If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**

(6)     If your answer to Question (d)(4) is "Yes" state:

Name and location where the appeal was filed: **NA**

Docket or case number: **NA**

Date of the court's decision: **NA**

Result: **NA**

(7)     If your answer to Question (d)(5) is "No" explain why you did not raise this issue:

**Virginia Supreme Court is the highest authority to the State.**

(e)     Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four. **None**

## GROUND FIVE: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO CHALLENGE THE ELEMENTS OF THE CHARGE.

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

(1)     Although Petitioner informed Trial Counsel repeatedly the brakes were working fine in Middleburg, and no evidence existed to the contrary, Trial Counsel stated that since the prosecution insists the brakes went out in Middleburg "so we are stuck with it".

(2)     Trial Counsel accepted prosecutions argument that the brakes were never bled even though evidence existed to the contrary.

     a.     The distance Dane drove the vehicle would be impossible if the brakes were not bled. Any expert on brakes would testify to this truth.

     b.     Petition informed Trial Counsel of brake job done in Brookfield, CO, which refutes Petrakos unqualified testimony, that the brakes were never bled.

     c.     Trial Counsel allowed unqualified testimony from Petrakos that incorrectly described the operations of the brakes which defied the Vehicle Maintenance Manual. (See Thomas Built Brake Manual, Page 10.3)

     d.     Trial Counsel refused to test for master cylinder failure, which is more conducive of catastrophic brake failure, as requested by Dane.

(3)     Trial Counsel was unaware the evidence proved the accident caused a leak in the

power steering unit and allowed the prosecutor to misrepresent the evidence on over 10 occasions stating Dane was driving with defective steering.

(4)   Trial Counsel misunderstood the evidence when he informed Dane the vehicle was overweight, rather than, heavier on the left side, which is standard for food trucks.

(5)   Trial Counsel admits in a letter he sent to Dane where he states he did not understand the medical reports, did not have an expert explain them to him, but stipulated without the knowledge to do so that the death of Erin Kaplin was caused by the accident instead of incompetence of Emergency Services.

(6)   Trial Counsel was unaware of the operation of the brake lights and allowed Petrakos unqualified testimony on the electrical system that defied the Vehicle Maintenance Manual.

(7)   Trial Counsel allowed prosecution to argue the lack of passenger seat belts, but never stated passenger seat belts were not required in this vehicle. The Prosecutor called the Criminal Negligence, when in fact the vehicle was in compliance with state law.

(8)   Trial Counsel allowed unqualified testimony from Petrakos as to tire reconstruction, but never had a qualified expert challenge his testimony.

(9)   Without any evidence Trial Counsel accepted the unqualified arguments that Dane never attempted engine braking or use of the parking brake, when evidence would have proven he had.

(b)   If you did not exhaust your state remedies on Ground Five, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)   Direct Appeal of Ground Five:
(1)   If you appealed from the judgement of conviction, did you raise this issue? **No**
(2)   If you did not raise this issue in your direct appeal, explain why?
      **This was not an appealable issue.**

(d)   Post-Conviction Proceedings:
(1)   Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
(2)   If your answer to Question (d)(1) is "Yes" state:
      Type of motion or petition: **Writ of Habeas Corpus**
      Name and location of the court where the motion or petition was filed:
      **Virginia Supreme Court**
      **Richmond, Virginia**
      Docket or case number: **200794**
      Result (attach a copy of the court's decision or order, if available): **NA**
(3)   Did you receive a hearing on your motion or petition? **No**
(4)   Did you appeal from the denial of your motion or petition? **No**
(5)   If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
(6)   If your answer to Question (d)(4) is "Yes" state:

18

Name and location where the appeal was filed: **NA**

Docket or case number: **NA**

Date of the court's decision: **NA**

Result: **NA**

(7)  If your answer to Question (d)(5) is "No" explain why you did not raise this issue: **Virginia Supreme Court is the highest authority to the State.**

(e)  Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five: **None**

## GROUND SIX: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO INVESTIGATE

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

(1)  Trial Counsel never investigated the cause of the brake failure, and accepted prosecutions false theory.

(2)  Trial Counsel never investigated where the brake failure first occurred, and only accepted prosecutions false theory.

(3)  Trial Counsel never investigated why the left side of the food truck was heavier, if he had he would have determined all food trucks are heavier on the left side and *mens rea* does not exist. This allowed the prosecution to argue the vehicle was out of compliance.

(4)  Trial Counsel never investigated the fact vehicles the size of the food truck does not require seat belts and allowed the prosecution to argue the vehicle was out of compliance, which is Criminal Neglect. The Respondent and Virginia Supreme Court did not argue the fact that passenger seat belts are not required.

(5)  Trial Counsel never investigated the fact the accident caused a leak in the power steering unit, when evidence presented by the prosecution proves this to be true, and then allowed the prosecution to argue against the evidence they presented.

(6)  Trial Counsel never investigated the condition of the brake lights and was unaware the brake light was tested by A1 Truck and Trailer. This was clearly marked in the Vehicles Maintenance Log. Trial Counsel did not understand the evidence because of their lack of investigation and allowed unqualified witnesses to testify contrary to the Vehicle Maintenance Manual.

(7)  Trial Counsel never investigated the condition of the tires and allowed unqualified witnesses to testify on tire reconstruction.

(8)  Trial Counsel never investigated if engine braking was used. Evidence existed that it had. Trial counsel allowed testimony without any evidence stating engine braking was not used contrary to the evidence.

(9)  Trial Counsel never investigated whether the parking brake was used to slow the vehicle down. Without any testing or evidence of any kind trial counsel allowed unqualified testimony the parking brake was not used. A proper investigation would

have refuted all evidence used by the prosecution to prove involuntarily manslaughter and reckless driving.

(b)    If you did not exhaust your state remedies on Ground Six, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)    Direct Appeal of Ground Six:
- (1)    If you appealed from the judgement of conviction, did you raise this issue? **No**
- (2)    If you did not raise this issue in your direct appeal, explain why?
  **This was not an appealable issue.**

(d)    Post-Conviction Proceedings:
- (1)    Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
- (2)    If your answer to Question (d)(1) is "Yes" state:
  Type of motion or petition: **Writ of Habeas Corpus**
  Name and location of the court where the motion or petition was filed:
  **Virginia Supreme Court**
  **Richmond, Virginia**
  **Docket or case number: 200794**
  Result (attach a copy of the court's decision or order, if available): **Denied**
- (3)    Did you receive a hearing on your motion or petition? **No**
- (4)    Did you appeal from the denial of your motion or petition? **No**
- (5)    If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
- (6)    If your answer to Question (d)(4) is "Yes" state:
  Name and location where the appeal was filed: **NA**
  Docket or case number: **NA**
  Date of the court's decision: **NA**
  Result: **NA**
- (7)    If your answer to Question (d)(5) is "No" explain why you did not raise this issue:
  **Virginia Supreme Court is the highest authority to the State.**

(e)    Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six. **None**

## GROUND SEVEN: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO CALL OR INTERVIEW WITNESSES

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):
- (1)    Trial Counsel refused to interview medical experts
  - a.    Medical experts would have informed Trial Counsel that Dane was in shock when questioned by police. This would have refuted false conclusions made

by prosecution, where there was no evidence to back up such conclusions.

1. The false claim that Dane did not use engine braking because he never told investigators he had.

2. The false claim that Dane did not use the emergency brake to attempt to slow the vehicle, because he never told investigators he had.

    b.    Medical experts would have testified Erin Kaplan would have survived the accident if not for the incompetence of emergency services.

(2)    Trial Counsel refused to interview or call as witness Loudoun County Deputy who questioned Dane in the Hospital Emergency Room.

    a.    Dane informed Trial Counsel of this witness, which Dane gave the location the brakes first felt spongy.

(3)    Trial Counsel failed to interview East Coast Custom Coaches. East Custom Coaches is the largest food truck designer in Virginia and Washington D.C.

    a.    This company designed and converted Dane's vehicle into a food truck.

    b.    They would have testified that all food trucks are heavier on the left side.

(4)    Trial Counsel failed to contact forensic, or experts on the mechanics of the vehicle.

    a.    An expert would prove the brakes were bled and it would be impossible for Dane to drive the vehicle over 40 miles without the brakes being bled, which would have refuted the unqualified false testimony of Petrakos.

    b.    An expert would have provided the brake lights were working prior to the accident and refuted the unqualified false testimony of Petrakos.

    c.    Would have pointed out to Trial Counsel the evidence proves that the amount of power steering fluid in the reservoir was within specifications, and the accident caused a leak.

    d.    Would prove forensically that the parking brake was used to attempt to slow the vehicle.

    e.    Would have informed Trial Counsel of the evidence showing engine braking was attempted, but this vehicle does not allow engine braking.

    f.    Would prove the slit in the tires came from the collision and disprove the unqualified false testimony of Petrakos.

(5)    Trial Counsel failed to interview prosecution witness Warren County Fire Marshall Meteo. Prosecution never called this witness, but if he had Metro would have testified that the food truck passed inspection and he had Dane awarded "Hometown Hero" because of the charity work Dane has done in the community. This testimony would have been allowed due to the Prosecutor opening the door when he stated in opening arguments "Dane ignored safety because he was only thinking about money."

(6)    Trial Counsel failed to interview Sarah Dewwees a prosecution witness who testified that it took "a very, exceptionally long time" for emergency services to show up.

    a.    Trial Counsel admits in a letter sent to Dane he did not understand the medical evidence and did not consult an expert.

    b.    Interviewing Ms. Dewees would start to highlight the incompetence of Emergency Services.

(b)   If you did not exhaust your state remedies on Ground Seven, explain why: **Highest level of appeal in state.**

(c)   Direct Appeal of Ground Seven:
   (1)   If you appealed from the judgement of conviction, did you raise this issue? **No**
   (2)   If you did not raise this issue in your direct appeal, explain why? **This was not an appealable issue.**

(d)   Post-Conviction Proceedings:
   (1)   Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
   (2)   If your answer to Question (d)(1) is "Yes" state:
         Type of motion or petition**: Writ of Habeas Corpus**
         Name and location of the court where the motion or petition was filed:
         **Virginia Supreme Court**
         **Richmond, Virginia**
         Docket or case number: **200794**
         Result (attach a copy of the court's decision or order, if available): **NA**
   (3)   Did you receive a hearing on your motion or petition? **No**
   (4)   Did you appeal from the denial of your motion or petition? **No**
   (5)   If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
   (6)   If your answer to Question (d)(4) is "Yes" state:
         Name and location where the appeal was filed **NA**
         Docket or case number: **NA**
         Date of the court's decision: **NA**
         Results: **NA**
   (7)   If your answer to Question (d)(5) is "No" explain why you did not raise this issue:
         **Virginia Supreme Court is the highest authority to the State.**

(e)   Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Seven: **None**

**GROUND EIGHT: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO RECUSE A JUROR**

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support you claim):
   (1)   Juror Belcher's son rides to school in a bus driven by prosecution witness Charity Dokes.
   (2)   Trial Counsel admits in his affidavit this witness could be prejudicial.
   (3)   Trial Counsel states in his affidavit he did not believe the Judge would recuse her.

(4)    Judge stated when he ruled against a change of venue, he would bring in a larger jury pool and be liberal in selection.

(5)    Judge stated he would leave it up to Trial Counsel, if he wanted her recused.

(6)    Based on what the Judge stated, Trial Counsel had viable reason to believe the Judge would not recuse this juror.

(b)    If you did not exhaust your state remedies on Ground Eight, explain why: **This was not an appealable issue**

(c)    Direct Appeal of Ground Eight:

(1)    If you appealed from the judgement of conviction, did you raise this issue? **No**

(2)    If you did not raise this issue in your direct appeal, explain why? **This was not an appealable issue.**

(d)    Post-Conviction Proceedings:

(1)    Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**

(2)    If your answer to Question (d)(1) is "Yes" state:
Type of motion or petition: **Writ of Habeas Corpus**
Name and location of the court where the motion or petition was filed:
**Virginia Supreme Court**
**Richmond, Virginia**
Docket or case number: **200794**
Result (attach a copy of the court's decision or order, if available): **NA**

(3)    Did you receive a hearing on your motion or petition? **No**

(4)    Did you appeal from the denial of your motion or petition? **No**

(5)    If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **No**

(6)    If your answer to Question (d)(4) is "Yes" state:
Name and location where the appeal was filed: **NA**
Docket or case number: **NA**
Date of the court's decision: **NA**
Result: **NA**

(7)    If your answer to Question (d)(5) is "No" explain why you did not raise this issue:
**Virginia Supreme Court is the highest authority to the State.**

(e)    Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Eight: **None**

**GROUND NINE: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO *VOIR DIRE* EXPERT WITNESSES**

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

    (1)   Deputy Petrakos gave unqualified expert testimony, without any adversarial challenge violating Code of Virginia §8.01-401.3(A) and Rule 2.702.

        a.   Trail Counsel did not *voir dire* Petrakos.

        b.   Trial Counsel never investigated the qualifications of a Safety Inspector.

        c.   Trial Counsel never investigated if Petrakos attended any classes outside that of a Safety Inspector.

        d.   Trial Counsel never investigated the material Petrakos was given to become a Safety Inspector.

        e.   Trial Counsel never investigated Petrakos resume or Curriculum Vitalia to verify if any classes were taken outside that of a safety inspector, nor did he request Petrakos resume or CV.

        f.   Petrakos was unchallenged by Trial Counsel when it came to his knowledge of brakes.

          1. Petrakos falsely testified the brakes were never bled in the history of the vehicle. Proven false by the interim line introduced into evidence by Petrakos.

          2. Petrakos giving false testimony as to how brakes operate, as verified by the Vehicle Maintenance Manual.

              i. Testified the brakes are one continuous system, when the Vehicle Maintenance Manual states it is two bidirectional systems.

              ii. Stated the Power Booster pushes fluid through the brake lines, when the Vehicle Maintenance Manual states the Master Cylinder pushes fluid through the brake lines.

              iii. Stated the brake lights was controlled by the brake booster and the power steering booster when the Vehicle Maintenance Manual does not list either unit as part of the electrical system.

        g.   Petrakos gave unqualified expert testimony as to the operation of the brake lights.

          1. Petrakos held up an unidentified component and claimed it operated the brake lights.

              i. Petrakos stated this component was disconnected from the brake booster when the Vehicle Maintenance Manual does not show any electrical connections to the brake booster.

              ii. Petrakos stated this component was disconnected from the power steering booster, when the Vehicle Maintenance Manual does not show a power steering booster as part of this vehicle's equipment, it does show a power steering unit, but the only electrical part is a sensor which was connected and working.

        h.   Petrakos gave unqualified expert testimony as to pre-collision conditions of the tires, when he lacked the training for such testimony.

        i.   Petrakos was not trained in forensic examination.

          1. Petrakos was unqualified to testify the brake failure was caused by a

brake repair completed by Dane.
2. Petrakos was unqualified to testify on tire reconstruction.

j.    Petrakos was not trained as a certified mechanic.
1. Petrakos was unqualified to testify on how brakes operate, as evident when his testimony contradicted the Vehicle Maintenance Manual.
2. Petrakos was unqualified to testify on the vehicles electrical system, as is evident when his testimony contradicted the Vehicle Maintenance Manual.

(2)    Deputy Russell gave unqualified expert testimony, without any adversarial challenge.

a.    Trail Counsel did not *voir dire* Russell.

b.    Trial Counsel never investigated the qualifications of a Safety Inspector.

c.    Trial Counsel never investigated if Russell attended any classes outside that of a safety inspector.

d.    Trial Counsel never investigated the material Russell was given to become a safety inspector.

e.    Trial Counsel never investigated Russell's resume or Curriculum Vitalia to verify if any classes were taken outside that of a safety inspector. Trial Counsel did not request a copy of Russell's resume or CV.

f.    Russell was unchallenged by Trial Counsel when it came to his knowledge of brakes, when he gave unqualified testimony on air bubbles in the brake line.

(b)    If you did not exhaust your state remedies on Ground Nine, explain why: **This Ground was argued in a Writ of Habeas Corpus to the Virginia Supreme Court.**

(c)    Direct Appeal of Ground Nine:
(1)    If you appealed from the judgement of conviction, did you raise this issue? **No**
(2)    If you did not raise this issue in your direct appeal, explain why?
**This was not an appealable issue.**

(d)    Post-Conviction Proceedings:
(1)    Did you raise this issue through a post-conviction motion or petition for Habeas Corpus in a state trial court? **Yes**
(2)    If your answer to Question (d)(1) is "Yes" state:
Type of motion or petition: **Writ of Habeas Corpus**
Name and location of the court where the motion or petition was filed:
**Virginia Supreme Court**
**Richmond, Virginia**
Docket or case number: **200794**
Result (attach a copy of the court's decision or order, if available): **NA**
(3)    Did you receive a hearing on your motion or petition? **No**
(4)    Did you appeal from the denial of your motion or petition? **No**
(5)    If your answer to Question (d)(4) is "Yes" did you raise this issue in the appeal? **NA**
(6)    If your answer to Question (d)(4) is "Yes" state:
Name and location where the appeal was filed: **NA**

Docket or case number: **NA**

Date of the court's decision: **NA**

Result: **NA**

(7)  If your answer to Question (d)(5) is "No" explain why you did not raise this issue: **Virginia Supreme Court is the highest authority to the State.**

(e)  Other Remedies: Describe any other procedures (such as Habeas Corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Nine: **None**

## Points and Authority

45.  Trial Counsel has a duty to vigorously fight for their client. To do this Trial Counsel needs a thorough understanding of the evidence and display the evidence in the best favorable manner to serve his client. The Supreme Court of the United States has stated: "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true criminal trial has been conducted - even if defense counsel may have demonstrated errors - the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. *U.S. v. Cronic*, 466 U.S. 648, 80 L. Ed 2d 657, 104 S.Ct. 2039 (1984)

46.  In this case there was no adversarial testing. First, there was no investigation as claimed in Grounds 1 and 6. Trial Counsel admits he did not look at any of the medical findings and allowed Safety Inspectors and the prosecutor to misrepresent the evidence due to their lack of understanding. In fact, Trial Counsel admits he did not understand the medical evidence and had no expert explain it to. him. (Trial Counsel's Letter to Petitioner).

47.  You cannot form a strategy without understanding of the evidence. Counsel has a duty to investigate all reasonable lines of defense, or to make reasonable determinations that such investigations are not necessary. *Strickland*. A decision not to investigate cannot be reasonable if it is uninformed. *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002) Trial Counsel has demonstrated a total lack of understanding of the evidence, as will be demonstrated in this Writ. Trial Counsel admitted in his letter, he was uniformed of the medical evidence, therefore his strategy was not reasonable.

48.  Ground 2 Failure to hire an Expert and Ground 6 Failure to investigate the mechanical evidence of the vehicle are even more egregious. Respondent claimed in his State Motion to Dismiss trial attorney Noor was an expert on brakes, therefore no expert or further investigation was needed. (Exhibit 3: State Filed Respondents Motion to Dismiss). If in fact Trial Counsel Noor was an expert, why did Noor allow testimony that defied the vehicles owner's manual? Why didn't he expose false testimony of Safety Inspector Petrakos when he said the brakes were never bled in the history of the vehicle, (TT2,31,1-4) which is

proven false by his own testimony. Why didn't Noor correct Petrakos when he said that the brakes are "one continuous system", (TT2,64,5-10) when the vehicles maintenance manual states the brakes are two bidirectional systems. (Thomas Built Brake Manual, Page 10.3) Respondent never claimed Noor was an expert in forensics, food trucks, skid or yaw marks, vehicle weight distribution, power steering fluid levels, or vehicle electrical systems, and neither trial counsels sought any assistance in these areas. Instead, they allowed false testimony from safety inspectors Petrakos and Russell neither had any training in these areas as we will prove in this document.

49.     The fact trial counsel provided no defense for Petitioner where if he understood the evidence a defense would have been provided. Trial Counsel's lack of understanding the evidence cannot be pawned off as strategy. Allowing Petrakos and Russell to testify outside their area of expertise and not providing a defense is a total betrayal of public trust in our judicial system.

50.     The American Bar Association Standards for Criminal Justice states "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to the facts relevant to the merits of the case and the penalty in the event of conviction. *Rompilla v. Beard*, 545 U.S. 374, 163 L.Ed. 2d 360, 125 S.Cut. 2456 (2005) Trial Counsel was so sure of a conviction; they did not spend any time investigating the facts. Counsel's apparent willingness to accept the government's version of the facts a lest calls into question the adequacy of his representation. *U.S. v. Matos*, 905 F.2d 30 (2nd Cir. 1990)

51.     The ineffectiveness of Trial Counsel is easy to see when comparing the evidence to the testimony of safety inspectors posing as experts:

52.     **BRAKES**: Safety Inspector Petrakos testified there was no evidence the brakes on Dane's vehicle were ever bled. (TT2, 31, 1-4) Then on redirect admits into evidence a brake line that was not part of the original brake lines but was installed prior to the line installed by Dane. (TT2,75, 7-18) If Trial Counsel were an expert as Respondent claims, he would have known that the brake lines would have to of been bled, which contradicts Petrakos' testimony. Rounding and scratch marks do not go away with time, So, if Petrakos' testimony were accurate, there would be rounding and scratch marks from previous brake work. This shows Petrakos is not an expert. [Ground 9] Trial Counsel Noor is not an expert and needed to hire one [Ground 2] and further investigation was needed. [Ground 6] Due to Trial Counsel not understanding the evidence [Ground 4] he was unable to challenge the elements of the crime. [Ground 5] No witness was called by Trial Counsel to refute the false testimony on the brakes. [Ground 7] This is not the only area Petrakos showed his lack of knowledge when it comes to brakes. Petrakos testified the brakes are one continuous system. (TT2, 64, 4-10) However, the Thomas Built Maintenance Manual  disagrees, showing there are two systems, and they are not continuous, rather bidirectional. (Thomas Built Brake Manual Page 10.3) If Petrakos were an expert, he would have known this.

[Ground 9] If Trial Counsel had any understanding of the evidence, he would have articulated this to the jury. [Ground 4] If Trial counsel would have investigated or consulted an expert, he would have known Petrakos testimony was false. [Grounds 2 & 6] This shows Trial Counsel did not understand the evidence. [Ground 3] This was an element that went unchallenged, [Ground 5] nor did Trial Counsel call any witness to challenge this false testimony. [Ground 7]

53.     Safety Inspector Russell, whose expertise relied on an 80-hour course in safety inspection and no training on the operation of brake systems, testified on how air bubbles break down then form back together. (TT2,109,8-11) This impossible theory is then regurgitated by Trial Counsel Noor in his affidavit thinking it makes him sound knowledgeable (Affidavit of Trial Counsel Noor). According to the unqualified testimony of Petrakos the brakes were never bled, so when 3 feet of brake line is installed, you open the system to air. Then when the line is installed, you have added a tube with 3 feet of air. The false testimony of Deputy Russell defies all logic. According to Patrakos and Trail Counsel Noor, 3 feet of air would break down into air bubbles, giving the use of brakes, then gather back together, taking away the use of the brakes. An expert witness would have proven Russell's testimony as illogical and false [Ground 6] If Trial Counsel Noor would have asked any brake mechanic, he would know how ridiculous Russell's testimony was. [Grounds 2,4-7] Deputy Russell was not qualified as an expert on brakes yet went unchallenged by ineffective Trial Counsel [Ground 9] Relying on Trial Counsel Noor, whose affidavit would be refuted by anyone with any training in brake repair, was either conniving with the prosecution or did not review. If we believe the  Respondent that Trial Counsel Noor was an expert, this will mean he knew the testimony was false and connived with the prosecution or Trial Counsel Noor is a better mechanic than lawyer and was simply incompetent for not refuting the false testimony of these so-called experts.

54.     It is well established in *U.S. v. Throckmorton* 8 Otto 61, 25 L.Ed. 93 (1878), where unsuccessful party has been prevented from fully exhibiting his case, by fraud or deception, as by keeping him away from court, a false promise of compromise, or keeping him in ignorance of the suit, or where an attorney, fraudulently or without authority, assumes to represent a party and connive at his defeat; or where attorney regularly employed corruptly sells out his client; and in similar cases where thereby as never been a real contest, new suit maybe maintained to set aside and annul judgement or decree. [Emphasis Added]

55.     So, if Respondent is correct, he is also admitting Trial Counsel Noor was fully aware of the false testimony of Deputies Petrakos and Russell and was conniving with the prosecution, or he sold out his client. Respondent never addressed the false testimony given by Deputies Petrakos and Russell gave, to prove the second element of Involuntary Manslaughter.

56.     The following points were made by the prosecution to prove the second element of Involuntary Manslaughter.

*Second Element:* That the killing, although unintentional, was the direct results of negligence so gross, wanton, and culpable as to show a callous disregard for human life. (Jury Instruction 7)

57. **WEIGHT OF VEHICLE:** The prosecution argued that it was "Criminal Negligence" because the left side of the vehicle weighed more than the right. (TT3,143,17-1) This is a blatant lie from the mouth of the prosecutor, violating the rules of professional conduct (Rules 3.3 and 3.8) and ineffective Trial Counsel never called him on it. <u>Every single food truck on the road, bar none, weighs more on the left side than the right.</u> [Emphasis Added] Respondent nor Virginia Supreme Court does not deny this fact. So, this cannot be Criminal Neglect. This was an easy argument with minimal research. They could have called East Coast Custom Coaches in Manassas, Virginia, they designed and built the food truck, along with most food trucks in Virginia and Washington D.C. [Ground 7] This also shows Trial Counsel did not review this issue with Petitioner. [Ground 3] Trial Counsel was of the understanding that the vehicle was overweight which proves they did not understand the evidence. [Ground 4] Trial Counsel did not investigate food truck design or call on any experts. [Grounds 2 and 6] Trial Counsel's lack of knowledge on this issue was his inability to remove this red herring as an element of Involuntary Manslaughter. [Ground 5] Instead, Trial Counsel chose to allow the unqualified testimony of Deputies Petrakos and Russell to be entered as fact. [Ground 9] In Respondents State Motion to Dismiss, they attempt to change prosecutions argument to the inability to navigate a right turn. (State Motion to dismiss). By taking their revised argument at face value, this is not even close to the second element of Involuntary Manslaughter, as it lacks the requisite *mens rea*. A vehicle in compliance that weighs 22,000 pounds does not have the ability to make a 90-degree turn driving at 45 miles per hour. The weight distribution is not only irrelevant to the elements of Involuntary Manslaughter but insulting to the intelligence of this court.

58. **POWER STEERING FLUID:** This is another lie told by the prosecutor violating the rules of professional conduct and is perpetuated in Respondents State Motion to Dismiss and the Virginia Supreme Court. As a Safety Inspector, both Deputies Petrakos and Russell were qualified to check the level of power steering fluid in the vehicle. Petrakos concluded "There was power steering fluid" (TT2,36-37) while Russell testified the reservoir was empty. (TT2,110-112) It is easy to conclude the accident caused a leak, and there was plenty of fluid at the time of the accident. *However ineffective counsel allowed the prosecution to lie to the jury by repeatedly stating Petitioner was driving without power steering fluid. (TT3, 24,7; 60,6-8; 61,7-8; 61-62,31-3; 62,6-12; 67,6-9; 96,7-18, 97,1-6) Trial Counsel did not understand the evidence or the testimony of Deputy Petrakos. [Ground 4] Trial Counsel did not investigate or consult an expert on the evidence. [Grounds 2 and 6] If Trial Counsel would have checked the maintenance records or brought this to the attention of Petitioner, he would have known fluid levels were checked every Sunday. [Ground 3] This evidence could have been easily removed as an element of Involuntary Manslaughter if Petitioner had effective assistance of counsel. [Ground 5] This is just another of many red herrings that went unchallenged. This issue lacked the requisite *mens rea* but was used to prove the

second element of Involuntary Manslaughter and doesn't come close to Criminal Negligence. In fact, there is no negligence at all.

\* The argument that Petitioners steering was in any way compromised is refuted by the evidence. 1. Dane had the swerve around a school bus and  child. (TT1, 228) This shows his steering was not impaired minutes before the accident, and 2. The yaw marks made by Dane's vehicle shows the wheels were turned all the way to the right. The Virginia Supreme Court ruled the lack of knowledge of Trial Counsel passed the performance prong of *Strickland*. However, combine this to prove steering was not impaired, also passes the performance prong.

**BRAKE LIGHTS**: According to Petrakos the brake lights did not come on when the pedal was pressed because the " brake booster was disconnected [from its] electrical connection." (TT2,34 & 43-44) This is once again false testimony based on the electrical diagram of the vehicle. (Thomas Built Bus Electrical Manual and Schematics) Nowhere on the electrical schematic does it show an electrical connection on the brake booster, moreover, looking at the brake booster you will not find any connections of any kind apart from one vacuum hose. Plain and simple Petrakos was fabricating testimony, and Trial Counsel allowed it to happen. If Trial Counsel would have gone over this evidence with Petitioner, he would have not only known, that the brake booster did not have an electrical connection but would have also known that the brake lights were recently tested when petitions added a trailer hitch to the vehicle. [Ground 3] If Trial Counsel would have checked the maintenance records, he would have known the brake lights were recently tested. [Ground 6] If Trial Counsel hired an expert, Petrakos false testimony would have been exposed. [Ground 6] If Trial Counsel would have called A1 Truck and Trailer, they would have testified the brake lights were tested and working. [Ground 7] This proves Trial Counsel's lack of understanding of the evidence. [Ground 4] An effective assistance of counsel would have removed this as an element of Involuntary Manslaughter due to *mens rea*. [Ground 5] Most of all, if Trial Counsel would have properly *voir dire* Petrakos, this false testimony would have never been admitted, as Petrakos does not have any training in vehicle electrical systems. [Ground 9] Even if the brake lights stopped working prior to the accident, which evidence does not substantiate this, rises to Criminal Negligence if Dane was unaware of the issue.

60.  **PASSANGER SEAT BELTS**: This was one of the many "Red Herrings" perpetuated by the prosecution, but not argued by Trial Counsel. Passenger seat belts were not required in this vehicle. Only handicapped school busses are required to have passenger seat belts. This point is so clear Respondent did not argue this in their States Motion to Dismiss (State Motion to Dismiss). This argument could have been dispelled at trial and show how the prosecution is grasping at straws to prove the second element of Involuntary manslaughter. Instead of trail counsel looking up the law, he chose to accept the false claim the vehicle was out of compliance, and therefore lacked *mens rea* and does not meet the standard of

any kind of negligence, moreover Criminal Negligence. (Grounds 2-6). Trial Counsel had a duty to understand the law. *Joseph v. Coyle*, 469 F.3d 441 (6th Cir. 2006)

61. **NO ENGINE OR USE OF PARKING BRAKE**: Yet another "Red Herring" introduced by the prosecution. The only evidence the prosecution had to prove this point was the fact Dane did not tell them he used either engine braking or the parking brake to slow down the vehicle. Dane has no obligation to talk to the police investigators. To use this against him is a violation of the Fifth Amendment to the Constitution of the United States. And an effective assistance of counsel would have objected to this testimony. This argument does not hit the standard of even being evidence and was prejudicial to Dane to show Criminal Negligence. However, Trial Counsel remained silent. In essence, Trial Counsel took the fifth and remained silent. If Trial Counsel would have called an expert, would have pointed out since the gear shifter was found in neutral (TT2,37), instead of drive you can argue Dane had his hand on the shifter down shifting, and at the point of collision moved the shifter to neutral. An expert would have checked for forensic evidence like score marks on the emergency brake drum. (Ground 2 & 6) Trial Counsel allowed this false testimony without any challenge. (Grounds 3 & 4) Trial Counsel did not attempt to argue that this "Red Herring" does meet the second element of Involuntary Manslaughter, and once again lacks *mens rea* and this prejudicial testimony should have never been allowed. (Ground 5)

62. **TIRES**: Testimony shows "some of" the back tires had been replaced. (TT2,55) However, Petrakos, stated that the tires had not been removed for a long time, but failed to state how it is possible to replace a tire without first removing it. To put it simply, Petrakos lied under oath. Trial Counsel did not pick up on how the evidence contradicted itself. (Ground 3 & 4) This also shows Petrakos was not an expert. (Ground 9) If he were an expert, he would know it is impossible to replace tires without removing the tire first. But the lack of knowledge of Petrakos goes much deeper. He had no experience in forensics, or accident reconstruction, yet testified without any objection from trial counsel. If Trial Counsel would have reviewed and understood the evidence this testimony would not have been allowed. (Grounds 3 & 4) Trial Counsel did not investigate how the front tires blew, nor did they hire an expert to explain it to them. (Grounds 2 & 6) This evidence should never have been omitted and removed as an element of Involuntary Manslaughter. (Ground 5)

63. **BRAKES FELT SPONGY IN MIDDLEBURG**: This was a lie stated by the prosecutor and Detective Grimsley. At no time did Dane ever state the brakes felt spongy in Middleburg. Dane begged Trial Counsel to argue this false claim. Detective Grimsley secretly recorded Dane at the scene of the accident. Dane stated he was new to the area and was not familiar with the names of the towns. The Prosecutor in his opening statement states: He [Dane] will tell you, on Route 50, in Middleburg, he felt that something with the brakes was not right. This statement is a lie. Dane made no such statement. (TT 1,137,11-13) Grimsley gave perjured testimony when he made the same statement, without playing the recording in court. (TT 1,198,13-16) The reason he did not play the recording, is because Dane never made that statement. The Virginia State Supreme Court claimed the recording was played

in court but was not substantiated by transcripts or the Respondent. Dane insisted Trial Counsel challenge this false evidence. Trial Counsel Pouilliard stated: "The prosecution refuses to back off on this, so we are stuck with Middleburg". It made no difference if it was true or not, or if the prosecution had evidence to back up a claim. Trial Counsel refused to challenge any claim made by the prosecution, proving that there was no adversarial process. (*Cronic*) Trial Counsel should have reviewed the recording, when Dane insisted that he never stated his brakes were spongy in Middleburg. Dane told an officer who was not Grimsley, the spot where the brakes felt spongy. Trial Counsel refused to obtain the identity of this officer and interview him. If Trial Counsel reviewed the tapes, he would have had the comments made by the prosecution prove to be false. (Ground 3) This also proves Trial Counsel did not understand the evidence. (Ground 4) Trial Counsel made no attempt to remove this false statement as an element to Involuntary Manslaughter. (Ground 5) Even though Dane kept insisting the brakes were fine in Middleburg, Trial Counsel did not investigate his claim. (Ground 6)

64.      Trial Counsel cannot chalk up all these errors as "trial strategy". The facts show Trial Counsel had no strategy at all. In closing arguments, the Prosecutor stated, "So when you look at everything involved in this case, the brakes, the weight, the power steering fluid, the brake lights, no seat belts, no engine braking, no parking braking. And all that, the accumulation certainly adds up to Criminal Negligence for this jury to decide." (TT3, 143-144) However when you put the accumulation in a truthful light; 1). No engine or parking braking, no forensic evidence was conducted. The only evidence was Dane never stated this was done. 2). No passenger seatbelts. Not required by law. 3). Weight of the vehicle. This is the standard of all food trucks. At this point, a reasonable jury would most likely vote "Not Guilty", but an effective Trial Counsel would have gone further. 4). No brake lights. A1 Truck and Trailer would testify they were recently tested. 5). No power steering fluid. Testimony of Petrakos and Russell proves the  accident caused a leak. And finally, 6). The brakes. Evidence shows the brakes were bled by Brakes and More and they did not leave visible scratch marks. When Dane bled the brakes, he did not leave any visible rounding or scratch marks either. Experts would testify that driving over 40 miles on brakes not bled, is impossible. Effective Trial Counsel would not stop there, they would show contrary to prosecution, steering was not impaired based on the evidence. Dane's steering was not impaired when he swerved safely around a school bus and Dane's steering was not impaired when he left yaw marks on the pavement showing his wheels were turned all the way to the right. At this point, even an unreasonable jury would have to vote "Not Guilty," as no evidence remains to show negligence of any kind and to attempt to find Criminal Negligence is far out of reach.

65.      **GROUND 8: FAILURE TO RECUSE JUROR BELCHER**. Juror Belcher came to the court and admitted her son was a passenger on a school bus Dane passed when his brakes went out. The bus driver who was a witness against Dane, was giving an interview on tv local news and her son watched. (TT2, 9,5-7) The Judge left the decision to recuse in the hands of Trial Counsel before questioning Belcher. (TT2, 7,13) It was the decision of Trial Counsel

to first question her before deciding. Furthermore, when Trial Counsel asked for a change of venue on February 27, 2018, the Judge denied the change in venue, but stated he would help ensure a fair jury, by a larger pool of potential jurors. The record shows the Judge was favorable to a jury that satisfied the defense. Based on this, all Trial Counsel had to do was ask to have Belcher recused and the Judge was prepared to grant. In Trial Counsel Adam Pouilliard affidavit. point 25, states both Pouilliard and Noor sought to disqualify Belcher. (See affidavit of Adam Pouilliard) The record does not show this to be a fact. He further states he did not believe Judge Kendrick would disqualify her. Once again, the record does not substantiate Pouilliard affidavit. Prior to questioning Belcher, Judge Kendrick stated he would leave it up to Trial Counsel.

## CONCLUSION

65.     It is abundantly obvious that Trial Counsel's failure to understand the evidence, created his inability to challenge any of the evidence brought forward by the prosecution. Trial Counsel could not develop a strategic choice, by allowing the prosecution to submit false evidence to the Court. Counsel's apparent willingness to accept the government's version of the facts at least calls into question the adequacy of his representation. *U.S. v. Mates*, 905 F.2d 30, 34 (2nd Cir. 1990) (Emphasis Added) Trial Counsel failed to produce any records that would dispute claims made by the government. *Vick v. Lockhart*, 952 F.2d 999 (8th Cir 1991) Trial Counsel failed to take the most basic steps to investigate and prepare a defense. *Turner v. Duncan*, 158 F.3d 449, 451 (9th Cir 1998) At the very least Trial Counsel could have introduced the maintenance records of the vehicle. *Osborn v. Shillinger*, 861 F.2d 612, 26-27 (10th Cir. 1988) As Trial Counsel stated in his letter to Dane, he had no understanding of the medical records, (Trial Counsel's Letter to Petitioner) but in Pouilliard affidavit to the Respondent he states he reviewed the medical evidence. (Pouilliard Affidavit). Of what benefit was it to Dane to review documentation you do not understand, and render a strategy based on your lack of understanding. Trial Counsel admits in his affidavit his investigation concluded after meeting with police investigators. This is where the investigation should start, not conclude. Trial Counsel made no attempt to refute the governments version of facts or investigate any of their allegations. Trial Counsel has a duty to investigate. *Strickland v. Washington*, 104, S.Cut. 2052, 2066 (1984) Trial Counsel had a duty to consultant an expert, although respondent claims Trial Counsel Noor was an expert, Noor's affidavit of air bubbles accumulating defies the laws of physics and is only regurgitated testimony from a government witness. However, no research or consultation was done with a real expert. *Lindstadt v. Keane*, 239 F.3d 191, 202 (2nd Cir.) (2001) Trial Counsel had a duty to retain a forensic expert. *Sims v. Livesay*, 970 F2.d 1575, 1577 (6th Cir. 1992)

67.     The haphazard nature of the defense to develop strategy of any consequence and absenting themselves from crucial portions of the trial constitutes no representation at all. *House v. Balkcom*, 725 F.2d 605 (11th Cir. 1984) (Emphasis Added)

68.    The performance of Trial Counsel falls way below the standards the ABA set for effective assistance of counsel. The First, Rule of Professional Conduct 1.1 provides "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skills, thoroughness and preparation reasonably necessary for the representation." *Massey v. Prince George's County*, 907 F.Supp. 138 (D.Md. 1995) Trial Counsel did not meet this standard when he failed to impeach safety experts disguised as experts on forensics, accident reconstruction, brakes, electrical systems, food truck weight distribution and vehicle tires. There have been several court decisions that establish that "defense counsel has not represented the defendant to the satisfaction of the Sixth Amendment when counsel fails to pursue an impeaching cross-examination or present additional evidence that would in all reasonable probability cast a reasonable doubt on the testimony of the government's main witness" *U.S. Ex Rel. McCall v. O'Grady*, 908 F.2d 170, 173 (7th Cir. 19)

The pettifoggery used by the prosecution went unchallenged by Trial Counsel. Ten times in closing argument the prosecutor stated there was no power steering fluid in the reservoir, when Petrakos, a prosecution witness clearly stated there was. It is well established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. *Mooney v. Holohan*, 294 U.S. 103, 55 S.Cut 340, [Omitted]. The same results obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Napue v. People v. Illinois*, 360 U.S. 264, 3 L.Ed. 2d 1217, 79 S.Cut. 1173, 1177 (1959) This is the case when Petrakos contradicted himself, first by stating the brakes shows no signs of ever being bled, then introducing into evidence a brake line older than the one installed by Dane, but newer than the original brake line. Neither the prosecution, nor Trial Counsel corrected the false testimony. However, when Dane pointed this out to Trial Counsel Pouilliard, Pouilliard response was "You [Dane] are misunderstanding the evidence." In fact, it was Trial Counsel who misunderstood the evidence. The Supreme Court is consistent that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. There can be no retreat from that principle here. *Miller v. Pate*, 386 U.S. 2, 17 L.Ed 2d 690, 87 S.Ct. 785, 788 (1967) quoting *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed 791 [Omitted]

69.    The States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape, or innocence suffer. *Berger v. United States*, 295 U.S. 78, 88, 79 L.Ed 1314, 55 S.Ct. 639, 633 (1935)

70.    The Virginia Supreme Court erred as a matter of law. The court stated *Brown*, 278 Va. at 528. "[G]ross negligence is punishable as Criminal Negligence when acts wanton or willful character, committed or omitted, shown a reckless or indifferent disregard of the rights of

others under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable results of his acts." Id. 528-29 (Internal Citation Omitted) First, there is no evidence to show Dane had any knowledge that the tragedy that occurred would have occurred when he went on his way to the venue. The Virginia Supreme Court refused to take into consideration that no adversarial testing had occurred as required by the Sixth and Fourteenth Amendment to the Constitution of the United States. See *Cronic*. Moreover, the Virginia Supreme Court refused to look at the evidence with any logic.

71.     In this case, the prosecution was so committed to winning he ignored the innocence of Dane. Typically, criminal offenses require both a volatile act  and a criminal intent - a *men's rea*. Wayne R. LaFave, Criminal Law §5.1, at 253 (5th end. 2010) A statute imposes strict liability when it dispenses with *mens rea* by failing to "require the defendant to know the facts that make his conduct illegal" *Staples v. United States*, 511 U.S. 600, 605 (1994) (Emphasis Added) When you remove ALL the false testimony perpetuated by the prosecution and allowed by defense counsel, Dane never had the requisite *mens rea* for Involuntary Manslaughter or reckless driving.

72.     It is an undisputed fact, that in a criminal prosecution, the accused shall enjoy the right.... to have the assistance of counsel for his defense." U.S. Constitution, Amendment 6. This guarantee is made applicable to the Commonwealth of Virginia by Amendment 14 of the U.S. Constitution. *Murray v. Griffith*, 243 VA 384, 388 (1992) (citing VA Dept. of Corr. v Clark, 277 VA 525, 533 1983). Virginia has also independently recognized fundamental right by including it in its Constitution, Article I,8; *Watkins v. Warden*, 266 VA 111, 116-17 (1983) Thus, the representing attorney must utilize "care and skill which a reasonable, competent attorney would exercise for similar services under the circumstances", It is reasonable to expect Trial Counsel to know the limitations of prosecution experts and ensure they do not testify outside their training an expertise. It is reasonable for Trial Counsel to have an independent expert to verify the cause of death of Erin Kaplan. It is reasonable for Trial Counsel to know that all food trucks are heavier on the left side of the vehicle. A reasonable defense attorney would know that a vehicle that weighs 22,000 lbs. is not required to have passenger seatbelts. A reasonable attorney would at the very least have an expert to look over the mechanical evidence to determine, if Dane were truthful and the brakes were bled by Brakes and More in Brookfield Colorado, or to compare the testimony of Petrakos and Russell as to the amount of power steering fluid in the reservoir, determining the fluid leaked out after the accident. A reasonable attorney would have presented the maintenance manual to prove the vehicle was well maintained. A reasonable attorney would have had an expert determine if the brake lights were working or not and if not determine if it were accident related and would introduce testimony from A1 Truck and Trailer proving the brake lights were tested. A reasonable attorney would have had the tires checked by an expert to prove the slits in the front tires were accident related. However, none of this was done by Trial Counsel. (Emphasis Added). Their "strategy" was to allow the prosecution free rein to make any claim no matter how false to the jury. The Supreme Court of the United States has held that a fair trial requires "evidence subjected to

adversarial testing heard before an impartial tribunal" in which the "right of counsel plays a critical role.   "*Strickland v. Washington*, 466 U.S. 668, 688(1984) (citing *Adams v. United States* ex. rel. McCann, 317 U.S. 269, 275, 276 (1942)

73.     In this case, Dane's case had no adversarial testing, Trial Counsel agrees in his affidavit Ms. Belcher should have been recused as a juror, (Pouilliard Affidavit) and counsel did not play a critical role. Considering the purpose of counsel, I am clear that "inadequate assistance [of counsel] does not satisfy [the defendants] right to counsel." *Cuyler v. Sullivan*, 466 U.S 335, 343-4 (1980) "Access to counsel's skills and knowledge is necessary to accord defendant the 'ample opportunity to meet the case of the prosecution, to which they are entitled." *Strickland*.

The right to effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted - even if defense counsel may have demonstrable errors - the kind of testing envisioned by the Sixth Amendment has occurred. But, if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. (*Chronic*)

74.     The presumption that counsel's assistance is essential, requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.[1] *US v. Cronic*, 648 U.S. 648, 80 L.Ed 2d 657, 104 S.Ct. 2039, 2045-47 (1984) No such adversarial test was conducted by Dane's Trial Counsel.

## **CLAIMS FOR RELIEF**

75.  **CLAIM UNDER 28 USC 2254 (D) (1) & (2)**

(1)     State Court did not follow clear established law under *U.S. v. Cronic*, 466 U.S. 648, 80 L.Ed 2d 657, 104 S.Ct 2039, 2045-47 (1984). No adversarial test was conducted by Dane's Trial Counsel. This is evident by the letter attorney Adam Pouilliard wrote to Dane. (Trial Counsels Letter to Petitioner). In this letter Pouilliard admits to not understanding the evidence but formed a strategy. *Fisher v. Gibson*, 282 F.3d 1283 (10th Cir 2002). Trial Counsel blindly accepted the States view of facts even though evidence was present to prove prosecution's theory false. *Kemp v. Leggett*, 635 F.2d 453 (5th Cir 1981) & *Williams v. Washington*, 59 F.3d 673 (7th Cir 1997)

(2)     Poor assessment of the facts.

---

[1]     The court has uniformly found constitutional error without the showing of prejudice when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceedings.

76. **BRAKES**: (1) scratch marks and rounding does not go away. Petrakos testified the bleeder valves had not scratch marks or rounding. Petrakos proffered that a recent brake job would have scratch marks or rounding, and the valves were rust. However, a picture of the valves shows no rust. (Picture of Bleeder Valve) The valves were never examined under a microscope, and a brake line was added a year prior to the accident. Properly fitted tools will not round a valve, they are designed not to. Any scratches would be microscopic. (2) The brakes on this vehicle are ABS Hydraulic Brakes which is a duel bidirectional system, not a singular continuous system as described by the unqualified Petrakos. The Virginia Supreme Court misquoted the Manual as it covered both Air and ABS Hydraulic brakes, as stated on every page. The Virginia Supreme Court erred when they stated in their decision that the manual provided on brakes covered "Air Brakes" only. The manual also covered "ABS Hydraulic Brakes" identical to the brake system on the vehicle driven by Petitioner.

77. Furthermore, the Virginia Supreme Court erred when it applied rounding and tool marks would vanish from earlier brake jobs. The bleeder valves are made of metal, and properly fit tools will not round the valve or leave scratch marks visible. The Virginia Supreme Court also restated Petrakos claim that the valve had rust on it. A color picture of the Bleeder Valve shows clean bleeder valves, without rust. (See Picture of Bleeder Valves)

78. **PARKING BRAKE AND ENGINE BRAKING**: The Virginia Supreme Court erred by not totally dismissing Petrakos testimony in this area, as prejudicial. Petrakos testimony solely based on the fact Dane did not tell investigators that he had used engine braking or the parking brake. The comments made by Petrakos are neither scientific or relevant, and effective counsel would have objected to such obscure statements. Dane was under no obligation to tell investigators anything based on the Fifth Amendment to the Constitution of the United States. The Virginia Supreme Court refused to honor Dane's Constitutional privileges. This statement by Petrakos is not evidence is but treated as such. This evidence was used against Dane at trial which prejudiced the jury into a false belief Dane did not do everything possible to attempt to avoid the tragedy that occurred. This is not Criminal Negligence, lacks *mens rea* and is prejudicial.

79. **BRAKE LIGHTS**: The Virginia Supreme Court erred when they refused to acknowledge the fact Petrakos testimony did not match the vehicles electrical diagram, and the fact that Petrakos had no training or experience in vehicle electrical systems. They also refuse to acknowledge the connector Petrakos referred to; had nothing to do with brake lights, so rust on the connector was not a factor to the condition of the vehicle. This is proven by the vehicle's schematics (See Thomas Built Bus, Electrical Manual and Schematics.

80. **WEIGHT OF VEHICLE**: Trial Counsel did not argue all food trucks are heavier on the left than the right side. Respondent the Virginia Supreme Court accept this fact but states it prevented Dane from making back sharp right turn. This argument lacks the required *mens rea*. If the vehicle complies with all laws, there is no intent.

81.     The Virginia Supreme Court erred when they used the uneven weight distribution as an argument for not being able to make a 90 degree turn at 45 miles per hour. This vehicle is not equipped to make a turn at that speed either in original form or converted to a food truck. The Virginia Supreme Court argument lacks *mens rea*. They contribute the weight with the lack of steering as contributing factors. However as argued under the power steering fluid, overwhelming evidence exists steering was not a factor, only the laws of physics.

82.     **POWER STEERING FLUID**: The prosecution argument which was upheld by the Virginia Supreme Court was the inability to make a sharp right-hand turn based on two factors; lack of power steering fluid making it hard to turn and uneven weight distribution. The uneven weight distribution is discussed above. Several factors admitted into evidence proves steering was not a factor. (1) Dane was safely able to maneuver past a stopped school bus avoiding injury to a child. (TT1,223) (2) Yaw marks prove the wheels were turned hard to the right (TT1,252, 10-22) (3) Petrakos checked the fluid levels which was marked at the minimum level, and afterwards it  was checked by Russell, with only trace amounts in the reservoir. According to the Virginia Supreme Court, this is not proof of a leak, but the court fails to explain what happened to the fluid between the time Petrakos and Russell checked. In addition, the vehicle maintenance logbook shows the fluid levels are checked every Sunday. The Virginia Supreme Court erred by totally ignoring the evidence.

83.     **YAW MARKS**: Trial Counsel did not understand the did difference between skid marks and yaw marks. Deputy Petrakos correctly explained to Trial Counsel that skid marks are made from brakes locking the wheels in place, while yaw marks are made by attempting to turn the vehicle, but the vehicle does not respond. The Virginia Supreme Court held that this met the "performance" prong of *Strickland* but did not satisfy the "prejudice" prong. The Virginia Supreme Court erred, because if Trial Counsel would have understood the evidence or had an expert explain it to him, he would have understood this is proof steering was not a factor in the accident. The yaw marks prove the tires were turned all the way to the right, but the vehicle did not respond. This is further proof of the lack of *mens rea* and that no evidence existed to prove the second element of Involuntary Manslaughter.

84.     **BRAKES FELT SPONGY IN MIDDLEBURG**: The Virginia Supreme Court erred when they stated a recording was played where Dane admitted the brakes felt spongy in Middleburg. Not only was no such recording played, but no recording exists. Dane, who is new to the area did not know the names of the towns in the area. Furthermore, the Virginia Supreme Court erred when it assumed Detective Grimsley was in the hospital room with Dane. It is true that Grimsley interviewed Dane in the hospital, but there was an Officer who sat with Dane throughout his Dane's stay. This officers name was not disclosed by the Prosecution and Dane requested his Trial Counsel find out who he is. Trial Counsel refused to do so.

85.     **SEAT BELTS**: Prosecution argued without objection the lack of passenger seatbelts put the food truck out of compliance. Trial Counsel never argued passenger seatbelts were not

required. Respondent and the Virginia Supreme Court accept this fact. The Virginia Supreme Court erred by not admitting this was prejudicial testimony. This bias interpretation of the law went without objection and was prejudicial to Dane.

86. **UNQUALIFIED DEPUTIES POSING AS EXPERTS**: Neither Petrakos nor Russell should have been able to testify under Code of Virginia §8.D1-401.3(A) and Rule 2:702 because they did not receive any training, nor did they have any experience in brakes, electrical systems, food truck design, tires, accident reconstruction, or forensics, but testified as experts in these areas. Neither Deputy provided their CV showing their training or expertise.

## STATUTORY

87.     Petitioner re-alleges and incorporates all allegations stated in his State filed Habeas Corpus and Traverse and all references in this document. Respondents' continued detention of Petitioner Dane is unlawful as no *mens rea* exists.

## SUBSTANTIVE DUE PROCESS VIOLATION

88. Petitioner re-alleges and incorporates all allegations stated in his State filed Habeas Corpus and Traverse and all references in this document.

89. Petitioner's continued detention violates Petitioner's rights to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint.

90. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty interest be narrowly tailored to serve a compelling government interest. Any interest Respondent have in detaining Petitioner is not based on any Federal or State law.

91. Petitioners' rights under the Sixth and Fourteenth Amendments of the Constitution of the United States was violated as Petition was not provided effective assistance of counsel.

92. Petitioner denied discovery under §2246.
    (1)   Virginia Supreme Court allowed affidavits submitted by Respondent, but denied Petitioner written interrogatories that was sent to Trial Counsel which violated §2246
    (2)   Petitioner was unable to obtain Deputy Russell and Deputy Petrakos resume, Curriculum Vitae (CV), Study material for Safety Inspectors, or study materials that would make them an expert on; brakes, forensics, vehicle electrical systems, tires, accident reconstruction, food truck weight distribution or any other area they testified as an expert.

93. Petitioner is denied access to the courts.
    (1)   Due to COVID19 the law library was closed March 2020.
    (2)   Institutional Attorney was only available through mail from March - October

2020. However Petitioner received no written response from 3 letters sent to Institutional Attorney, and one response came 6 months after request.

   (3)   Institutional Attorney is only available through video conference.

       (a)   Institutional Attorney does not research the law.

       (b)   Institutional Attorney is unable to review documents through the video screen.

       (c)   It takes over a month to get any requested document from Institutional Attorney.

   (4)   Sending in requests for law through the institution;

       (a)   Institution threatens to charge for the documents.

       (b)   It takes several weeks to get the documents ordered.

       (c)   The institution does not conduct any type of research.

   (5)   Petitioner is denied receiving legal mail.

## **EVIDENTIARY HEARING**

94.   An evidentiary hearing is necessary under §2254(e)(2)(b) if not for the following errors, no reasonable fact finder would have found Dane guilty of the underlying offense.

   (1).   Dane's Sixth and Fourteenth rights under the U.S. Constitution were violated when Trial Counsel did no adversarial testing of any of the evidence used against Dane. If he had, there would not have been any evidence that would be left to substantiate involuntarily manslaughter. *Cronic*

   (2).   Dane's rights were violated under Code of Virginia §19.2-264.3:4 where prosecution did not submit, nor did trial counsel request a copy of Deputies Petrakos and Russell's *Curriculum Vitae*. If this would have been submitted the testimony of both Petrakos and Russell would not have been allowed, apart from checking the level of power steering fluid. All other testimony falls outside of their expertise and experience as Safety Inspectors.

   (3).   If trial counsel would have understood the difference between skid marks and yaw marks, he would have been able to prove, based on forensic evidence, Dane's steering was not diminished and steering was not a factor in the accident.

95.   Please answer these addition questions about the petition you are filing:

       (a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? **Yes**

       (b)   Is there any ground in this petition that has not been presented in some state or federal court? **No**

96.   Have you previously filed any type of petition, application, or motion in federal court regarding the convention that you challenge in this petition? **No**

97. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgement you are challenging? **No**

98. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgement you are challenging:
    (a) Preliminary Hearing: Adam Pouilliard; VSB# 87921; Senior Assistant Public Defender; 201 Loudoun Street SE, Suite 300, Leesburg, VA 20175 & Shayan Noor; Assistant Public Defender, Address Unknown.
    (b) Arraignment: Adam Pouilliard; VSB# 87921; Senior Assistant Public Defender; 201 Loudoun Street SE, Suite 300, Leesburg, VA 20175 & Shayan Noor; Assistant Public Defender, Address Unknown.
    (c) Trial: Adam Pouilliard; VSB# 87921; Senior Assistant Public Defender; 201 Loudoun Street SE, Suite 300, Leesburg, VA 20175 & Shayan Noor; Assistant Public Defender, Address Unknown.
    (d) Sentencing: Adam Pouilliard; VSB# 87921; Senior Assistant Public Defender; 201 Loudoun Street SE, Suite 300, Leesburg, VA 20175 & Shayan Noor; Assistant Public Defender, Address Unknown.
    (e) Appeal: D. Eric Wisley; VSB# 70727; Struckman, White & Wiseley PC; 111 East Main Street, Front Royal, VA 22630

99. Do you have any future sentence to serve after you complete the sentence for the judgement you are challenging? **No**

100. **TIMELINESS OF PETITION**: If your judgement of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. §2244(d) does not bar your petition. I believe I am still within the timeframe, however if I'm not, conditions arose preventing me from filing sooner.

The time it took to file an appeal, and the fact a collateral attack is not allowed in Virginia. The Virginia Department of Corrections also crated an impediment by not allowing a collateral attack and hindering my access to the courts by shutting down the law library, restricting access to the Institutional Attorney, and making it difficult to receive documents. Due to the lack of resources in the institution, Petitioner had to email this petition to an outside source for typing. Petitioner's handwriting is not legible, and the institution refused any accommodation to type the document.

This institution did not allow this document to be mailed to Petitioner (See Affidavit of Tony Dane and Jerry Littman). This entire document was typed on a device the size of a cell phone and emailed in 22 parts, then assembled in Las Vegas and mailed back to Petitioner for review. However, this institution refused to accept the documents and deliver them to Petitioner on three occasions. Finally, when received and reviewed, they were then mailed back to Las Vegas for corrections, before being submitted. This had to be done to ensure a legible copy was filed. This took well over one month. This would not have been necessary if the institution did not block access to legal mail.

41

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1)   Assume jurisdiction over this matter;

(2)   Expedite consideration of this action pursuant to 28 §U.S.C 1657 because an action brought under chapter 153 (Habeas Corpus) of Title 28;

(3)   Pursuant to 28 §U.S.C. 2243 issue an order directing the Respondent to show cause why a writ of Habeas Corpus should not be granted;

(4)   Appoint counsel for Petitioner pursuant to 28 §U.S.C. 2255(g), 18 U.S.C. §3006A (a)(2)(B) and *Martinez v. Ryan* 183 L.Ed 272, 132 S.Ct. 1309 (2012)

(5)   Grant Petitioner a writ of Habeas Corpus directing the Respondent to immediately release Petitioner from custody, or in the alternative, grant an evidentiary hearing.

(6)   Order that Petitioner be provided a bail hearing in front of a Magistrate of proper jurisdiction, so Petitioner can properly participate in these proceedings.

(7)   Grant any other and further relief as the Court deems just and proper I declare and verify under penalty of perjury that the foregoing is true and correct.

7/10/2021
_____
Date

_____
Tony Dane Petitioner pro se

## Certificate of Mailing

I, Jerry Littman, declare that I delivered a true and correct copy of this Writ of Habeas Corpus, first class postage prepaid to the United States Postal Service on:

7/10/2021
_____
Date

_____
Jerry Littman