**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Tony Steven Dane,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:21cv854 (AJT/TCB)** |
| | ) | |
| **Harold Clarke,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

Tony Steven Dane ("Dane" or "Petitioner"), a Virginia inmate proceeding pro se, filed a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in

the Circuit Court of Loudoun County, Virginia for involuntary manslaughter, in violation of

Virginia Code § 18.2-36; and four misdemeanors including operating a vehicle without an

operator's license – second or subsequent offense, in violation of Virginia Code § 46.2-300;

operating an uninsured vehicle, in violation of Virginia Code § 46.2-707; reckless driving, in

violation of Virginia Code § 46.2-852; and operating a vehicle after failing to submit it for

inspection, in violation of Virginia Code §§ 46.2-1157 and 46.2-1171. [Dkt. No. 1]. Respondent

has filed a Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 10-12]. Dane was

notified of his right to respond as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975)

[Dkt. No. 18], and has responded by seeking to expand the record, leave to conduct discovery,

and filing a motion for summary judgment or in the alternative grant an evidentiary hearing.

[Dkt. Nos. 18, 20, 22]. Accordingly, this matter is now ripe for disposition. For the reasons that

follow, respondent's Motion to Dismiss must be granted, Dane's motions will be denied, and the

petition will be dismissed.

## I. Procedural History

Dane was tried by a jury in the Circuit Court for Loudoun County from March 19-23, 2018, and convicted of involuntary manslaughter; and four misdemeanors — operating a vehicle without an operator's license – second or subsequent offense, operating an uninsured vehicle, reckless driving and operating a vehicle after failing to submit it for inspection. (Case Nos. CR31352-00 through -04).  On July 12, 2018, the trial court sentenced Dane to a total term of ten years and eighteen months in prison and fines totaling $3,500.

Dane filed an appeal in the Court of Appeals of Virginia and alleged the evidence was insufficient to sustain his conviction for involuntary manslaughter, and that the trial court applied the wrong standard in denying his motions to strike. A panel of the Court of Appeals denied Dane's petition for appeal on May 22, 2019. (Record No. 1227-18-4). In determining the evidence was sufficient, the Court of Appeals summarized the evidence.

> On September 8, 2017, appellant drove his food truck, a modified 40-foot bus weighing approximately 22,000 pounds, from Front Royal through Middleburg enroute to a high school football game in Ashburn, [Virginia] where he intended to sell food from his bus. When he reached the "T" intersection at Watson Road and Evergreen Mills Road in Loudoun County, his food truck ran the stop sign at the intersection and struck a vehicle occupied by Erin Kaplan, her three children, and her mother. Kaplan died as a result of the crash. It was undisputed that the cause of the crash was the failure of the food truck's brakes.
>
> During an interview with police following the crash, appellant admitted that he personally had replaced a rear brake line on the food truck four or five days before the crash but had not driven the food truck since the day of the repair. Appellant told police that he noticed around Middleburg that his brakes "felt spongy to him where they weren't acting appropriately," because they "weren't giving him the stopping power he needed," and he was "not able to slow down at [his] normal rate." Appellant admitted that he knew something "didn't feel right" with the food truck's brakes.
>
> Appellant did not pull over or otherwise seek remedial action despite ample opportunities; instead he proceeded to Leesburg, passing multiple gas stations and parking areas along the way. On Watson Road, near the intersection with Evergreen Mills Road, appellant approached a stopped school bus. He "pressed the brakes several times," but they did not work and "went to the floor." Appellant swerved around the school bus, and continued unabated downhill

2

through a stop sign and into the intersection. Unable to brake or negotiate a turn at the intersection, appellant struck Kaplan's vehicle.

Deputy Sheriff Mike Petrakos and Deputy Sheriff First Class Brian Russell testified as experts in "motor vehicle safety inspection and commercial vehicle inspection." Petrakos and Russell examined appellant's food truck at the scene and later at the police impound lot. Russell determined that the brake failure was caused by air in the hydraulic brake system. Petrakos explained that air would have been introduced into the closed hydraulic brake system with any brake line repair and that bleeder valves on the brake calipers should have been manipulated following repair with a tool to "bleed off" any air in the system. Petrakos testified that no tool marks appeared on any of the food truck's brake caliper bleeder valves, which would have been noticeable if the valves had been properly exercised when appellant replaced the brake line. Petrakos also noted that there was a pre-crash kink in one of the old brake lines that "would restrict the flow of hydraulic fluid through the brake line." Russell opined that

> [w]ith replacement of the new line and the condition of the old lines, it would seem that there was air in the system that was not bled out. Over the course of the timeframe from Front Royal to Middleburg to Watson Road, the air essentially circulated the system and reduced, and reduced, and reduced the actual braking force until there was none.

Russell added that "spongy" brakes are a "warning sign" that there is "air in the system."

In addition to the condition of the food truck's brake system, Petrakos and Russell identified several other potentially hazardous deficiencies, including unbalanced weight distribution, poor tire condition. inoperable brake lights, minimal power steering fluid, significant rust and scaling on the underside of the bus, and wheels rusted to such a degree that they were difficult to remove. The food truck had never been subjected to a state safety inspection in Virginia, and the only indication that it had ever been inspected was a Utah inspection sticker from 2011. Master State Trooper Norman Goins testified that the food truck would have failed a state safety inspection. Contrary to his representations to the police that he was licensed and insured at the time of the crash, appellant did not have a driver's license, standard or commercial, nor did he have insurance for the food truck.

****

The totality of the evidence presented in this case objectively establishes that appellant's negligence was so gross, wanton, and culpable as to show "callous disregard of human life.'" Keech[ v. Commonwealth], 9 Va. App. [272,] 278 [(1989)]. In the wake of a faulty do-it-yourself brake repair, appellant drove an uninsured, uninspected 22,000-pound bus in poor mechanical condition without a driver's license. Even though he realized that his brakes were failing, appellant willfully disregarded the risk to others and continued driving, to a tragic conclusion. A bus travelling on the road "without stopping power" creates

3

"circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned." Rich[ v. Commonwealth], 292 Va. [791,] 802 [(2016)]. Indeed, "[a]n important distinction between involuntary manslaughter and lesser offenses 'is the likelihood of injury to other users of the highways.'" Hargrove v. Commonwealth, 10 Va. App. 618, 620 (1990) (quoting Mayo v. Commonwealth, 218 Va. 644, 648 (1977)); see also Keech, 9 Va. App. at 278.

…. Here, …, the evidence establishes that appellant disregarded the risk of a known deficiency, failing brakes.

Appellant admitted to police that he noticed around Middleburg (about half-way to his destination) that his brakes "weren't giving him the stopping power he needed" and felt "spongy." He conceded that his "brakes [weren't] feel[ing] right." The Commonwealth introduced evidence that despite his awareness of these irregularities, appellant continued past multiple gas stations, stores, parking areas, a weigh station, and a fire station, without stopping to investigate. Considering that he had just replaced a brake line, a reasonable trier of fact could conclude that appellant's acknowledgment that his brakes "weren't giving him the stopping power he needed" either did, or should have, put him on notice that there was a problem.

…. here appellant set in motion a chain of events that led to the crash, and upon having reason to know that there was a problem with his brakes in Middleburg, he had a duty to act to avoid the danger to other motorists, but did not. Appellant chose to undertake a do-it-yourself repair to the most critical safety mechanism on a 22,000-pound bus—the brakes. In doing so, appellant "knew or should have known" that a mistake could lead to catastrophic results, for both those on the road and those on the bus. Miller[ v. Commonwealth], 64 Va. App. [527,] 543-44. The record compels a finding that appellant did not bleed the air from the hydraulic brake system after installing a new brake line, which directly led to brake failure and consequent crash at the expense of Kaplan's life. Petrakos testified that if the repair had been properly done, tool marks would have been noticeable on each brake caliper's bleeder valves, but no such marks were found. Appellant argues that his brake repair as a "reasonable lay person" insulates him from criminal liability, because it was unreasonable to expect him to know that the air must be bled from the hydraulic brake system to avoid brake failure. We disagree. Even assuming that appellant was not subject to the standard of care of a skilled mechanic and was reasonably ignorant of the faulty repair when he installed the new brake line, he had actual notice that there was a problem with his brakes in Middleburg. Moreover, after repairing the brake line, appellant made no effort to test the food truck's brakes, or otherwise ensure their operational integrity. Instead, appellant elected to drive the food truck for the first time four or five days after the repair from Front Royal to Ashburn.

We have recognized that "'[t]he cumulative effect of a series of connected, or independent negligent acts' causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life." Cheung[ v. Commonwealth], 63 Va. App. 1, 9 (2014) (quoting Stover v. Commonwealth, 31

4

Va. App. 225, 231 (1999)) (alteration in original); see also Jetton v. Commonwealth. 2 Va. App. 557 (1986) (considering "several factors," including "the condition of [appellant's] truck," and failure to pass safety inspection where the brakes did not work properly, in upholding conviction for vehicular manslaughter). Here, in addition to evidence concerning the food truck's brakes, the jury heard evidence that appellant did not have either a commercial or standard driver's license at the time of the crash. As we have noted, "[d]ue to their size and weight, buses are more difficult to drive than typical passenger automobiles. Accordingly, bus drivers are required to undergo additional training and pass additional tests to demonstrate their competence driving these vehicles in order to obtain licenses. See Code §§ 46.2-341.7, 46.2-341.9, 46.2-341.14, and 46.2-341.16." Cheung, 63 Va. App. at 13. Appellant willfully failed to meet these requirements, and a reasonable inference is that his lack of qualifications contributed to the crash. The jury also considered evidence that appellant never put the food truck through a safety inspection in Virginia and that, had he done so, it would have failed on several fronts. Because an inspection would have kept the food truck off the road, the crash could have been avoided if appellant subjected it to the required inspection. See Code § 46.2-1157. Finally, the jury could have concluded reasonably that appellant's lack of insurance and the poor condition of the bus generally—as evidenced by the unbalanced weight distribution, kinked brake line, poor tire condition, inoperable brake lights, minimal power steering fluid, significant rust and scaling on the underside of the bus, and rusted wheels - demonstrated appellant's reckless disregard of human life.

Dane raised the same issues in a petition for appeal to the Supreme Court of Virginia, and that court refused his appeal on February 21, 2020. (Record No. 191054).

Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on August 14, 2019, Dane v. Clarke, Record No. 200794 and raised the following claims:

1. Trial Counsel was ineffective for failure to consult with a Pathologist or Medical Expert to determine the cause of death. (Id. at 66, 86-87).

2. Trial Counsel was ineffective for failure to consult an Expert on the mechanics of the "Food Truck." (Id. at 66, 68-72).

3. Trial Counsel was ineffective for failing to review evidence with Petitioner. (Id. at 72-73).

4. Trial Counsel was ineffective for failure to review and understand the evidence presented by the Prosecutor. (Id. at 66, 97-99).

5. Trial Counsel was ineffective for failing to challenge the elements of the charges. (Id. at 66, 99-100).

6. Trial Counsel was ineffective for failure to investigate. (Id. at 100-01).

7. Trial Counsel was ineffective for failing to interview witnesses (Id. at 66, 102-05).

8. Failure to recuse a Juror. (Id. at 66, 105-06).

9. Trial Counsel was Ineffective for Failure to Voir Dire Prosecution Experts. (Id. at 164-65).

The Supreme Court of Virginia denied and dismissed the petition on May 19, 2021.

On or about July 12, 2021, Dane filed his § 2254 federal petition for a writ of habeas corpus, and alleged the following claims:

1. Failure of counsel to consult with a pathologist or medical expert to determine the victim's cause of death.

2. Failure of counsel to provide "adversarial testing" by not consulting an expert on the mechanics of the food truck.

3. Failure of counsel to review the evidence with petitioner.

4. Failure of counsel to review and understand the evidence presented by the prosecutor.

5. Failure of counsel to challenge the elements of the charges brought against him.

6. Failure of counsel to investigate his case.

7. Failure of counsel to call or interview certain witnesses.

8. Failure of counsel to recuse a juror.

9. Failure of counsel to voir dire expert witnesses.

[Dkt. No. 1 at 10-26].

## II. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

6

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. (quoting Gray, 518 U.S. at 162).

Finally, exhaustion requires that not only must a claim be exhausted but the facts upon which a petitioner relies must have been exhausted as well. A petitioner must, therefore, have presented "'both *the operative facts* and the controlling legal principles'" to the state court for review. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (emphasis added) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)). The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA limits federal habeas "review under § 2254(d)(1) … to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Muhammad v. Clarke, No. 1:11cv345, 2012 U.S. Dist. LEXIS 10129, *24 (E.D. Va. Jan. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing Kasi, 300 F.3d at 501-02; Pinholster, 563 U.S. at 182-83), appeal dismissed, 474 F. App'x 979 (4th Cir. 2012). Pinholster emphasized "that the record under review is limited to the record in existence at that same time — *i.e., the record before the state court*." Id. (emphasis added).[1] The Fourth

---

[1] Pinholster explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to

Circuit found that the reasonableness of a state court decision is evaluated "in light of the evidence presented in the State court proceeding." <u>Porter v. Zook</u>, 898 F.3d 408, 443 (4th Cir. 2018) (quoting <u>Jones v. Clarke</u>, 783 F.3d 987, 991 (4th Cir. 2015)).

Respondent admits the § 2254 claims are exhausted for purposes of federal habeas corpus review, but that Dane's motion to expand the record and submission of new affidavits in support of his motion for summary judgment raise unexhausted facts. Dane has not addressed exhaustion other than to conclusory state he is incarcerated and had to rely on friends. Dane's motions and recently submitted affidavits will be addressed below.

### III. Standard of Review

Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>accord</u> <u>Renico v. Lett</u>, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014)

---

evidence it did not even know existed.  We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

(internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) … to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 18. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687. The United States Supreme Court has characterized AEDPA deference in the context of "a Strickland claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a

guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

   *A. Claim 1*[2]

---

[2] Due to the disjointed and overlapping manner in which Dane constructed his state habeas petition, the state habeas court addressed related portions of different claims together because the supporting allegations were repetitive. In each instance, the state habeas court dismissed the allegation of ineffectiveness together with the related or overlapping portions of other claims.

Claim 1 asserts that counsel was ineffective for failing to consult with a pathologist or medical expert to determine the victim's cause of death. Dane alleges medical personal did not arrive at the scene of the collision until an hour after the crash and argues counsel was ineffective because he could have introduced evidence to show that although the victim was injured in the crash, the delay in the arrival of emergency medical personnel at the scene caused the victim's death. Dane's argument, that the delay in the arrival of the EMTs and proper equipment needed to reach Kaplan because she was trapped in her vehicle underneath Dane's bus was the cause of the victim's death, was not a viable defense given the facts of his case. Before analyzing his claim, the state habeas court summarized the relevant facts.

> The record, including the trial transcript, the stipulation of facts, exhibits from trial, and the affidavits of both of petitioner's counsel, demonstrates that petitioner owned a food truck, a modified 40-foot bus that weighed over 22,000-pounds, and that petitioner drove the bus from Front Royal through Middleburg, enroute to Ashburn to sell food at a high school football game. Petitioner told Detective Michael Grimsley that in Middleburg he noticed his brakes started to feel "spongy," meaning they "weren't giving him the stopping power he needed," and he was "not able to slow down at [his] normal rate." Despite passing several gas stations and other locations where he could have pulled over, petitioner chose to continue driving his 22,000-pound bus even though his brakes were not working properly. As he neared the intersection of Watson Road and Evergreen Mills Road, petitioner approached a stopped school bus. He pressed his brakes several times, but they failed completely, and he was unable to stop the bus. He swerved around the school bus, narrowly missing a child crossing the street, attempted but failed to make a right-hand turn from Watson Road onto Evergreen Mills Road, and then ran a stop sign at the intersection, crashing into a car driven by Erin Kaplan. Kaplan's mother and three children were also in the car. Emergency responders arrived at the scene shortly after the crash but were unable to reach Kaplan to assess or treat her because she was trapped in her vehicle, which was under petitioner's bus. When they finally were able to reach Kaplan approximately three hours after the crash, she was pronounced dead at the scene. The record does not support petitioner's assertion that Kaplan survived the impact.

(VSCT R. at 1467).

In Virginia, a "defendant is criminally responsible for the victim's death … if the wounds caused the death indirectly through a chain of natural effects and causes. An intervening event,

*even if a cause of the death*, does not exempt the defendant from liability if that event was put into operation by the defendant's initial criminal acts." Levenson v. Commonwealth, 808 S.E.2d 196, 199 (Va. Ct. App. 2017); see, e.g., Gallimore v. Commonwealth, 436 S.E.2d 421, 426 (Va. 1993) (affirming an involuntary manslaughter conviction where appellant's fabrication of a kidnapping story put into operation a series of events that led to the shooting of the victim by a third party). For example, if a defendant is intoxicated and speeding and crashes, "[m]edical treatment [is] a reasonably foreseeable consequence of the car crash …. put into operation by [the defendant]'s criminal conduct…. [and he] is 'criminally responsible for [the victim]'s death' because the wounds received from the crash 'caused death indirectly through a chain of natural effects and causes.'" Levenson, 808 S.E.2d at 200 (citation omitted); id. at 199 ("medical treatment is not a superseding cause if the need for the treatment was put into operation by the defendant's wrongful act or omission"). In addition, there can be more than one proximate cause and an intervening event "does not operate to exempt liability if the intervening event was put into operation by the defendant's negligent acts." Gallimore v. Commonwealth, 436 S.E.2d 421, 425 (Va. 1993); see generally Brown v. Commonwealth, 685 S.E.2d 43, 46 (Va. 2009); O'Connell v. Commonwealth, 634 S.E.2d 379, 383 (Va. Ct. App. 2006).

In dismissing this claim in state habeas, the Supreme Court of Virginia applied its jurisprudence on proximate causation and held that Dane had failed to demonstrate his counsel's deficient performance or prejudice because Dane's collision with Kaplan's vehicle was the cause of her death. (VSCT R. at 1468-69). The court further explained that, despite emergency personnel being delayed in reaching Kaplan because she was trapped in her vehicle beneath Dane's bus, it was still Dane that caused the crash that resulted in Kaplan's inaccessibility and the ultimate delay of any treatment that may have been able to be rendered had she been able to be reached sooner. Id. The state habeas court found that Dane

12

> knew in Middleburg that his brakes were not working properly, but continued driving over ten miles until the brakes failed completely, and *this failure* caused petitioner to run through the stop sign and crash into [] Kaplan's vehicle. Any delay in providing medical care to Kaplan was because she was trapped under the bus and medical personnel could not reach her to provide the necessary care.

(Id. at 1468) (emphasis added).[3] The state habeas court noted that Dane's attorneys did not

believe that a defense based upon the delay in medical treatment was viable because

> "it was rather clear from the medical examiner's report that the injury which ended [Kaplan's] life was the result of the accident"….[and] counsel stipulated to the medical examiner's report because they wanted to "minimize" the amount of live testimony on this issue, as such testimony can be very impactful on a jury.

(Id.).

The court found that counsel's "tactical decision to focus their defense on challenging the

Commonwealth's evidence of criminal negligence, as opposed to focusing the jury's attention on

Kaplan's injuries and death," and that counsel's decision not to consult a medical expert and

instead choosing to stipulate[4] to the medical examiner's report and thereby minimize the amount

of live testimony about Kaplan's suffering and injuries was not unreasonable. (Id.).

The state habeas court also noted that Dane had failed to proffer "the name of any expert

who would support his theory and contradict the medical examiner's determination as to cause of

death." (Id. at 1468-69) (citing Muhammad v. Warden, 646 S.E.2d 182, 195 (Va. 2007)

(rejecting claim that counsel was ineffective for failing to procure a witness where petitioner

failed to identify the witness or proffer what information such witness would have provided)); cf.

Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate

---

[3] In his interview with Detective Grimsley at the hospital, Dane admitted that about halfway through his trip (roughly a 50 mile trip) his "stopping power" was not what it should have been, and the brakes were "a little bit funny," he "wasn't able to slow down at his normal rate," and "the brakes weren't feeling right." (Ex. No. 8, 4:45 through 5:18).

[4] The medical examiner determined that Kaplan died as a result of blunt force head and lower extremity trauma as a result of the crash. (Id.).

investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding that the "great failing of the appellant on his claim that other evidence should have been presented ... is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called").

The Supreme Court of Virginia's dismissal of Claim 1 was not contrary to or an unreasonable application of federal law, and Claim 1 will be dismissed.

*B. Claim 2*

In Claim 2, Dane alleges his counsel failed by not consulting an expert on the mechanics of food trucks, by not offering evidence from such an expert at trial on the matter, and generally, that his counsel failed to interview and call certain witnesses. [Dkt. No. 1 at 12-14, 20-21]. Dane argues that an expert would have been able to counter the testimony of Deputies Petrakos and Russell about: the bleeder valves, the brake system was one continuous system, the brake lights, the lack of seatbelts, the weight distribution (heavier on the left), and the prosecutor's arguments that engine braking and the parking brake were not used.

*1. "Closed System" and "Bleeder Valves"*

Dane argues that if counsel had hired an expert, the expert would have testified the prosecution's theory about how the brakes failed was false, and that there must have been another cause of the failure. In support of this claim, Dane mischaracterizes two portions of Detective Petrakos' testimony.

First, Dane alleges that Petrakos testified the hydraulic brake system on the bus was "one continuous system" [Dkt. No. 1 at 13], which is based upon Petrakos answer to questions during his cross-examination by Dane's counsel. In reviewing how to remove the air from a brake line, Petrakos explained that each bleeder valve needed to be opened and closed "until they are

14

spraying pure liquid and no air," and when there is "no air" that was how you knew there was no

more air in the line. (3/20/18 Tr. at 63-64). Counsel then asked

> Q. … And then at that point, we go over to the master cylinder. The master
> cylinder is – there's one for all the brake lines –
>
> A. Uh-huh.
>
> Q. Because it's continuous. It's one continuous system.
>
> A. Correct.

(Id. at 64). Dane, however, ignores Petrakos explanation on direct that the pressure in the brake

line, without air, was necessary to force the brake pads to close, and that all of the brake lines

were part of the same hydraulic system. (Id. at 23, 25). In explaining how a hydraulic system

works, Petrakos had testified that

> [a] hydraulic braking system is a sealed system that has hydraulic fluid running
> through the brake lines, brake components.
>
> When the driver presses the brake, it creates that force through the hydraulic fluid
> and applies it to the brake system. The system normally doesn't – the system does
> not – is not supposed to have air in the system.

(Id. at 27). Petrakos confirmed that a hydraulic braking system is "one system of pressure," and

that the replacing of a brake line introduces air into the system that needs to be removed through

the bleeder valves. (Id. at 27-28, 28-30). Subsequent to his testimony, Detective Russell

described the hydraulic braking system as a closed "sealed system" (Id. at 94-95), and if the

system is opened, and not bled to remove the air that comes in, it reduces the "efficiency of the

brakes." (Id. at 95).[5] The Supreme Court of Virginia summarized Deputy Petrakos's testimony

about the bus's brake system concluding that the record demonstrated that Dane's bus "had a

hydraulic brake system, not an air brake system, and that the hydraulic system was a single,

sealed system that controlled the front and rear brakes." (VSCT R. at 1469). The prosecution's

---

[5] Russell also described the workings of a hydraulic brake system at length describing the parts as a reservoir, lines, calipers, and pistons. Brake fluid is non-compressible and once the brake fluid is added, and the system bled, the brake pedal, through the master cylinder, opens and closes the pistons in the calipers. (Id. at 94-95).

presentation of the how a hydraulic braking system, taken as a whole and in context, was not "false" as alleged.

Dane also mischaracterizes Petrakos' testimony as to when the bleeder valves had been used to bleed the brakes. Petrakos did not, as alleged, testify that the brakes had never been bled. [Dkt. No. 1 at 13]. Petrakos' testimony about the lack of apparent use of the bleeder valves was in the context of Dane's claim that he had replaced one of the brake lines within the last week. A recent replacement of a brake line would have broken the seal on the hydraulic system, allowed air into the system, and would have required that the system be bled to remove the air. (Id. at 29-31).[6] His observations about the bleeder valve was made within the context of brake work having been done "less than a week prior" to Petrakos' examination of the bus. (Id. at 30).

It is evident from Petrakos's testimony about the condition of the undercarriage (rusted and covered with debris), that the bleeder valves had not been used recently to bleed air out the lines. Petrakos examined the brake system in the context of Dane's statement that he had replaced a brake line a few days before the accident. The undercarriage had significant rust and scaling, and Petrakos had to use an impact wrench and sledgehammer to get the wheels off the bus to conduct the inspection of the vehicle. Due to the rust and road crud (oxidation) that had collected on the undercarriage, if a wrench had been used on any of the bleeder valves there woold have likely been tool marks on them given the recency of Dane's work on the brake line. (Id. at 18, 21-22, 29-30). When Dane replaced the brake line shortly before the crash, he introduced air into the system that he did not bleed out. Deputy Petrakos testified that he examined the bleeder valves on the brake calipers, which were oxidized or rusty, and he did not

---

[6] Dane had also told Detective Grimsley that he had added brake fluid to the system the weekend before because he had noticed that one of the brake lines "had been leaking a little bit of brake fluid, and he actually had to put some brake fluid in the vehicle that previous weekend…." (3/19/20 Tr. at 19). Dane had noticed that the bus was "low on brake fluid" the weekend before the crash. (Id.).

see any tool marks on the bleeder valves. Petrakos explained that Dane had stated he had recently replaced a brake line and given the condition of the calipers he would have expected to see some tool marks. (Id. at 29-30). From Petrakos testimony, sufficient facts exist for the finder of fact to conclude that the bleeder valves on the bus's brake system had not been used, recently, and that the brake system had not been bled after Dane replaced the brake line during the three or four days prior to the crash.[7]

The state habeas court found that Dane had failed to show either deficient performance or prejudice on this point. Additionally, the court noted that Dane had not proffered the name of an expert that would testify that there was another cause for the brake failure. Under AEDPA, the Court's review of the state court's decision is limited to the record before the state court. See Pinholster, 563 U.S. at 18; see, supra at 7-8. Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of Strickland v. Washington was not contrary to or an unreasonable application of federal law.

*2. Weight Distribution*

This allegation concerns testimony by Detective Russell that the uneven weight load of the bus (13,500 pounds on the left side and 8,500 pounds on the right side) was a factor in Dane's inability to turn the bus and avoid crashing into Kaplan's car. (3/20/18 Tr. at 88). Counsel was aware of these facts prior to trial, and the testimony from Deputy Russell established the reasons for the heavier right side was due to the kitchen components of the food truck being located on that side. (Id. at 89). The weight of the vehicle affects emergency

---

[7] Pictures of the bleeder valves were introduced into evidence as well as the actual calipers, with the bleeder valves attached and in the same condition as they were on the date of the accident, were available for the jury to examine. (CCT R. at 935-39). One of the pictures introduced shows the amount or crud, debris, rust, and dust dislodged from the bus when one tire was removed during the inspection of the bus. (CCT R. at 937; 3/20/Tr. at 43). Other pictures demonstrate that the undercarriage of the bus was severely rusted (with flaking) and covered with crud and other road debris. It is completely reasonable for a trier of fact to have seen all of this evidence and concluded that there was no evidence that the bleeder valves had been recently turned to bleed air out of the line.

stopping, emergency turning and increase the possibility of rollover. (Id. at 89-90). Russell testified that the heavier left side was one factor that made a right hand turn more difficult — which is largely common sense and the reason why we slow before making turns. Russell testified that the heavier left side, during a right-hand turn, would force the vehicle to the left and "it makes the vehicle feel like it wants to make a wide turn." (Id. at 91).[8]

Dane does not explain how further investigation of an undisputable fact –the weight distribution – was unreasonable or how it would have affected the outcome of his trial. In noting this failure in state habeas, the state habeas court dismissed the claim for failing to state a claim under either prong of Strickland v. Washington, stating that "[w]hether most food trucks have uneven distribution *is not relevant* to whether petitioner's bus was safe to be on the road in the condition it was in and counsel could reasonably have determined expert testimony regarding the weight distribution of food trucks would not have been helpful to petitioner's defense. (VSCT R. at 1471).[9] Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of Strickland v. Washington was not contrary to or an unreasonable application of federal law.

*3. Power Steering Fluid*

Dane next alleges counsel was ineffective for allowing the prosecutor to repeatedly state there was no power steering fluid in the power steering fluid reservoir. [Dkt. No. 1 at 13-14]. The state habeas court dismissed this claim.

---

[8] Dane had already acknowledged the weight of his vehicle affected the manner in which he drove it during his interview by Detective Grimsley on the date of the accident. Dane told Grimsley that he usually "drove below the speed limit" because the bus did not "have the [same] stopping power of the car," and he had to anticipate that he would be "cut-off." (Ex. 8 at 2:45-53).

[9] Dane discussed his inability to make the right turn with Grimsley and was relevant. Dane had admitted that he "couldn't make the turn sharp enough" when he spoke with Detective Grimsley at the hospital. (Ex. 8 at 1:49-50). The statement was made after Dane recounted the bus was going downhill, he had to avoid the school bus, and he did not believe it was safe to leave the roadway because of his two passengers.

Petitioner asserts Deputy Petrakos testified he checked the power steering fluid after the crash and it "was at the minimum level on the" dipstick. Deputy Russell examined the bus later and found only a trace amount of fluid in the reservoir. This evidence, petitioner argues, showed the power steering fluid leaked as a result of the crash, and the lack of power steering fluid was not, as the Commonwealth argued, either a contributing factor in the crash or reflective of poor maintenance of the bus. Because of counsel's lack of understanding in the trial preparation, they failed to adequately convey this information to the jury.

The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record including the trial transcript, demonstrates that Deputy Petrakos testified that when he inspected the bus, the power steering fluid "measured below," not at, the minimum line on the dipstick. Similarly, Deputy Russell testified that when he examined the bus, there was no fluid on the dipstick, but by shining a flashlight into the reservoir he could see trace amounts of fluid within. Contrary to petitioner's assertion, the deputies' testimony was consistent that the power steering level was below the amount required for the power steering to function properly and there was no evidence that it was leaking. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(VSCT R. at 1471-72). Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of <u>Strickland v. Washington</u> was not contrary to or an unreasonable application of federal law.

### 4. Brake Lights

In dismissing this allegation, the Supreme Court of Virginia found Dane had failed to establish deficient performance or prejudice and summarized the facts in support of its decision as follows:

The record, including the trial transcripts, demonstrates that Deputy Petrakos examined the bus and testified the brake lights did not come on when the brake pedal was depressed because the electrical connector from the brake light to the brake booster was disconnected. Further, Deputy Petrakos explained there was rust in the area where the connector was supposed to be plugged in, suggesting the light had been disconnected prior to the collision. Counsel could reasonably have determined evidence that petitioner had a trailer hitch package installed at some point in time, and that at the point in time the brake lights may have worked, was not relevant to whether the brake lights were functioning on the day of the crash.

(VSCT R. at 1472).[10] Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of <u>Strickland v. Washington</u> was not contrary to or an unreasonable application of federal law.

### 5. Seatbelts

Dane alleges that counsel was ineffective for not "looking up" the requirements for seatbelts.[11] The state habeas court found Dane had failed to establish either deficient performance or prejudice, and dismissed the allegation as follows:

> the record ... demonstrates that the drivers' seat was the only seat on petitioner's bus that had a seat belt and that petitioner had two juvenile passengers on his bus sitting on barstools without seatbelts. When questioned shortly after the crash, petitioner explained that one of the reasons he did not attempt to run the bus off the road after he realized the brakes were not working was because of the unsecured juvenile passengers. Under these circumstances, counsel could reasonably have determined evidence that seatbelts were not legally required would not have been beneficial to petitioner's case.

(VSCT R. at 1472-73). Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of <u>Strickland v. Washington</u> was not contrary to or an unreasonable application of federal law.

### 6. Engine Braking and Parking Brake

---

[10] The level of corrosion evident on the brake switch from the exhibit introduced at trial was clearly sufficient for a trier of fact to conclude that the brake switch had not been connected for some time. (CCT R. at 935).

[11] In his petition, Dane alleges that Petrakos testified that the lack of seatbelts in the food truck constituted "Criminal Negligence" has no basis in fact. [Dkt. No. 1 at 14] (citing 3/20/18 Tr. at 140). First, Petrakos did not testify about the seatbelts, Deputy Allen did. Further, Allen simply testified to factual matters— that there were no seatbelts on the stools and that the only seat on the bus with a seatbelt was the driver's seat. (<u>Id.</u> at 227, 229). The portion of the record Dane references in his petition is not testimony, but the prosecutor's argument in response to defense counsel's motion to strike in which defense counsel argued that it was not "until you get to the hard stop moment where you are behind the [school] bus" that Dane, in a "very tight timeline" of less than one minute, that Dane had "knowledge of the existing circumstances [and] that his conduct would probably cause injury to another." (<u>Id.</u> at 135-36, 137). The prosecutor's response stated Dane was an adult driver with two teenagers in his bus "sitting on barstools with no seatbelts," which put "everyone in a no-win situation" because Dane knew that if an emergency situation arose with the two "unrestrained teenagers" on board he could not "just drive the bus off the road because he is endangering them. So[,] his choices are endanger[ing] [the two unrestrained teenagers] or endanger someone else." (<u>Id.</u> at 140). The prosecutor concluded by stating that Dane's criminal negligence began well prior to the point in time when his "brakes go out." (<u>Id.</u>). In short there was no testimony, and the prosecutor's argument where he mentioned the lack of seatbelts on the stools occurred while the jury was not present. (<u>Id.</u> at 130, 150).

In this portion of his claim, Dane alleges that his attorney was ineffective for not challenging the prosecution's argument that he did not use engine braking or the parking brake to slow the bus prior to the crash. [Dkt. No. 1 at 14]. Dane suggest that the fact that the gearshift was found in neutral when the bus was examined after the crash indicates the "he might have placed his hand on the gearshift prior to the crash, planning to downshift in an attempt to slow the bus." (VSCT R. at 1473). The Supreme Court of Virginia dismissed this allegation for failure to state a claim under either prong of Strickland v. Washington finding that

> [t]he record, including the trial transcript and affidavit of counsel, demonstrates defense counsel questioned Deputy Petrakos, who admitted that neither engine braking nor use of the parking brake would be effective in slowing a 22,000-pound bus. Moreover, petitioner fails to explain how an expert could have divined petitioner's intent to use engine braking, which Deputy Petrakos explained as slowing the vehicle by shifting into progressively lower gears, from the mere fact that the bus had been shifted, not into a lower gear, but into neutral, at some point before the deputy inspected it. Further, petitioner does not contend the brake shoes actually showed any signs of burn marks.

(Id.). The state habeas court's dismissal of this allegation was not an unreasonable application of federal law or an unreasonable determination of the facts and will be dismissed.[12]

Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of Strickland v. Washington was not contrary to or an unreasonable application of federal law.

### 7. Condition of the Tires/Testimony Outside of Expertise

Dane alleges counsel was ineffective in allowing Petrakos, who had no forensic training regarding tires, to testify and for not having the tires examined by experts. [Dkt. No. 1 at 14]. In a related allegation, Dane alleges Petrakos and Russell were allowed to testify outside their area

---

[12] In addition, Dane has failed to show that there is any evidence that he attempted engine braking or using the parking brake and, importantly, that either would have been effective in slowing the 22,000-pound school bus. See Bassette, 915 F.2d at 940-41 (when challenging the adequacy of counsel's investigation, defendant must show what an "adequate" investigation would have uncovered).

of expertise. [Id. at 15]. Again, Dane offers no expert who would provide any favorable testimony. See Bassette, 915 F.2d at 940-41.

The specifics in his allegation concern Deputy Petrakos' testimony about the gashes or slits in the two front tires. Although the pictures of the tires are clearly not favorable to Dane,[13] defense counsel sought to minimize their impact through cross-examination and brought out several points that minimized the defect in the tire in comparison to the pictures alone, and negated the smaller split on the left front tire. Petrakos noted dry rot and a three-and-one-half inch split on the front left tire that he stated could have happened during the crash. (3/20/18 Tr. at 52). The split on the right front tire was eleven inches long and due to the presence of debris in the split and rust on at least fifty percent of the exposed metal mesh in the sidewall of the tire, Petrakos concluded the split predated the crash. (Id. at 53-54). Petrakos admitted on cross-examination that the tear on the right front tire may have been smaller prior to the crash, and that the crash could have enlarged the tear on the tire. (Id.).

The state habeas corpus found that Dane had failed to identify which portion of Petrakos' testimony was objectionable or outside his area of expertise, and dismissed the allegation because Dane had failed to establish either deficient performance or prejudice. (VSCT R. at 1479). Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of Strickland v. Washington was not contrary to or an unreasonable application of federal law.

The Supreme Court of Virginia's dismissal of claim 2, as well as its several separate allegations, was not an unreasonable application of federal law or an unreasonable determination of facts. Claim 2 will be dismissed.

---

[13] The pictures of the tires introduced into evidence show not only the tears in the tires and the rust in the one tire, but evidence of dry rot as well. (CCT R. at 929-33).

*C. Claim 3*

In Claim 3, Dane alleges counsel was ineffective for not going over the evidence with Dane prior to trial, specifically the evidence regarding seatbelts, power steering fluid, engine braking, the parking brake, tires, the brake light, or the unequal weight distribution of the food truck. [Dkt. No. 1 at 16]. The state habeas court dismissed this claim for failure to state a claim of ineffective assistance of counsel under either prong of <u>Strickland v. Washington</u>. The court summarized the claim as follows:

> Petitioner asserts that if counsel had reviewed the evidence with him, he could have advised counsel the brakes had previously been repaired in Colorado, which would have disproved the Commonwealth's evidence that the brakes had never been bled. Further, petitioner would have pointed out to counsel that the evidence showed the power steering fluid was leaking, and that it was low at the time of the crash. Petitioner again claims that the testimony of Deputies Petrakos and Russell indicated the power steering fluid initially came to the minimum line on the dipstick, but that a later check showed only trace amounts of fluid in the reservoir. Petitioner also asserts he would have advised counsel that all food trucks are heavier on the left side and that the company that converted his bus would have testified to that fact. Petitioner would have advised counsel the brake lights were working, and they could prove it by calling the company that installed the trailer hitch. Finally, petitioner could have provided counsel with maintenance logs for the bus, which would have shown it was "well maintained and the new parking brake shoes were installed, plus other routine maintenance that was done to the vehicle."

(VSCT R. at 1474). The court concluded that based upon the record, that the

> Evidence was not that the brakes had never been bled, but that they did not appear to have been bled recently. In addition, … the evidence did not support any inference that the power steering fluid was leaking due to the collision. Rather, both deputies who examined the power steering reservoir testified the dipstick showed the power steering fluid was below the minimum required level. Moreover, … counsel could reasonably have determined any evidence that all food trucks are heavier on one side would not have been helpful to petitioner, as whether most food trucks have uneven weight distribution was not relevant to whether petitioner's bus was safe to be on the road given the lack of power steering fluid, the poor condition of the tires, and the defectively repaired brakes. Further, contrary to petitioner's assertion, evidence that the brake lights had been working at some prior point in time when the trailer equipment was installed would not have negated the Commonwealth's evidence that the lights were not working prior to the crash. Finally, petitioner fails to proffer the maintenance logs

23

he claims he would have provided to counsel, or to explain what "routine maintenance" had been done, when it was done, or how it would have negated the Commonwealth's evidence that the brakes on the bus failed due to the faulty repair petitioner performed several days prior to the crash, that petitioner noticed the brakes felt spongy in Middleburg, but chose to keep driving instead of pulling over to check them, that the power steering fluid was below the minimum amount required for the power steering to function properly, contributing to petitioner's inability to turn the bus prior to the crash, that the brake lights were not connected, and that the bus had not been inspected in years and, based on the condition it was in, would not have passed a Virginia safety inspection.

(Id. 1474-75). As noted, Dane's claim in state court failed for a multitude of reasons — his mischaracterization of testimony, a lack of relevancy, and his failure to proffer the maintenance logs he claims exists. Based upon the record before the state habeas corpus, its determination that Dane had failed to satisfy either prong of Strickland v. Washington was not contrary to or an unreasonable application of federal law.

*D. Claim 4*

In Claim 4, Dane alleges his attorneys were ineffective because they failed to review and understand the evidence presented by the prosecution. [Dkt. No. 1 at 17].[14] In support of his claim, Dane realleges most of his prior allegations in terms that counsel did not understand: the brakes had been bled; how the brakes worked; the accident cause the power steering to leak, that steering was not a factor in the accident because Dane was able to swerve[15] to avoid the school bus; forensic testimony was needed to refute Petrakos' testimony; the yaw marks were not skid marks; and how the brake lights worked. [Id.].

---

[14] The record establishes that trial counsel had "open book," discovery of the prosecutions file, and that the prosecutor had complied with the discovery order as well, including email updates. Defense counsel also had access to the physical items as well and the prosecutor had given defense counsel "the factual pieces for what our argument for criminal negligence is." (2/27/18 Tr. at 23, 24).

[15] The video taken by the school bus camera does not show that Dane's food truck swerved to avoid hitting the school bus. The video shows that the food truck was in the on-coming traffic lane for several seconds before it passed the school bus, and that it was traveling in a straight line from the moment it came into view until it passed the school bus, which is approximately five seconds. (Ex. 5, 2017/Sep/08 at 16:25:46 through 16:25:52) (backward view of video). After passing the school bus, Dane steered the food truck back into the proper lane of travel. (Id. at 16:25:52 through 16:25:54) (front view of video).

24

The Court has already addressed the allegation about the brakes appearing not to have been bled recently, see supra at 23-24; how the brakes worked, see supra at 15-17; the testimony about the power steering fluid, see supra at 19; the need for forensic experts, see supra at 23; and the brake lights. See supra at 20. The only new aspect of alleged ineffective assistance in this claim is the questioning about the yaw marks.[16]

At trial, one of Dane's attorneys showed Deputy Allen a photograph of yaw marks in an attempt to show Dane had applied the brakes prior to the crash. (3/19/18 Tr. at 252-53). The state habeas court dismissed this allegation because Dane had not demonstrated that there was a reasonable probability that but for the alleged error, the result of the proceeding would have been different. The state habeas court's dismissal of this claim was not contrary to or an unreasonable application of federal law and it will be dismissed.

---

[16] Dane incorrectly asserts that the state habeas court found his counsel's performance regarding the yaw marks was deficient. [Dkt. No. 1 at 17]. The state habeas court did not rule on the performance prong of Strickland v. Washington, it only found no prejudice had been established. Trial counsel had a difficult job given the poor appearance of the undercarriage and pursued a defense that sought to establish that while the brakes failed, the failure was gradual, over time, and that it was imperceptible to Dane. Although the answer regarding the yaw marks did not favor Dane, the question was consistent with trial counsel's attempt to use the prosecution's witnesses to establish facts that favored their theory (such as diminishing the splits on the tires by introducing evidence that the crash could have caused the tear to the front left tire and increased the tear on the front right tire; and that the deputy who retraced the route from Middleburg to the location of the crash rarely used his brakes, and when he applied them, he only tapped them before he had to attempt a "hard stop"). In any event, since Dane failed to establish the prejudice prong, the claim was properly dismissed.

### E. Claim 5

In Claim 5, Dane alleges his attorney was ineffective for not challenging "the elements of the charge." [Dkt. No. 1 at 18]. The allegations in support of this claim are largely duplicitous of his claim regarding the cause of death, see, supra, at 11-14, and ignore the defense theory pursued that sought to raise an issue of foreseeability (a gradually failing brake system), and to direct the jury to focus on Dane's actions once the brakes failed and not his conduct prior to that point in time. The dismissal of this claim was addressed by the Supreme Court of Virginia in connection with several of Dane's other claim (due to the overlapping manner in which he constructed his state habeas petition, VSCT R. at 1475-76), and the court found that Dane had failed to establish a claim under either prong of Strickland v. Washington. The court's dismissal of the claim was not contrary to or an unreasonable application of federal law. And will be dismissed.

### F. Claim 6

In Claim 6, Dane alleges his attorney was ineffective for not investigating his case. As with his other claims, Dane attempts to recast his allegations — the cause of the brake failure, the weight distribution of food trucks, the alleged leak of the power steering fluid, the detached brake light, the teras in the tires, and whether the parking brake or engine braking was used — as a failure to investigate claim. See, supra at 11-24. As noted throughout this memorandum, defense counsel made reasonable tactical decisions regarding cause of death, developing a defense that focused on the time of the crash and not the preceding period, and using the prosecution's witnesses to assist in pursuit of that defense. The state habeas court's decision to

dismiss his allegations of failure to investigate was not contrary to or an unreasonable application of federal law, and the claim will be dismissed.[17]

*G. Claim 7*

In Claim 7, Dane alleges his attorney was ineffective for not interviewing 1) medical experts who would have told the attorneys he was in shock when he was interviewed and Kaplan would not have died but for the delay by medical personnel; 2) the deputy that interviewed Dane in the emergency room; 3) a food truck designer who would have testified that all food trucks are heavy on the left side; 4) experts who would have testified about the brakes and related matters (the brakes being bled, that the brake lights were working, the parking brake was used, Dane attempted to use engine braking, and the slit in the tire came from the collision; 5) the Warren County Fire Marshall who would have testified that the food truck passed and Dane had been awarded an award for charity work; and 6) Sarah Dewes who would have testified that it took a long time for the medical personnel to arrive. Each allegation will be addressed in turn.

With regard to the allegation that Dane was in shock when interviewed at the hospital, the recording of that interview does not support a state of shock. Dane was lucid, sober, coherent, and suffering from minor leg pain. (3/19/18 Tr. at 195). The recording itself establishes that Dane was responsive, he expressed concern for those that he hit, he had no memory issues and he provided detailed responsive answers to questions, and his presence of mind is evident from his request for his wallet, cell phone, and keys that were in the food truck and he provided the

---

[17] To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify "what an adequate investigation would have revealed … [and] cannot establish ineffective assistance of counsel under Strickland v. Washington on the general claim that additional witnesses should have been called …." Bassette, 915 F.2d at 940-41; see Evans v. Cockrell, 285 F.3d 370, 377-78 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

likely location of each item. Dane has not identified any qualified medical professional that would aver that he was in shock, and proffered no evidence to that effect.

Deputy Grimsley interviewed Dane at the hospital and testified at trial. Dane has not established that counsel did not interview him or that doing so was unreasonable. Further, he has proffered nothing that would be the basis for establishing prejudice. Likewise, the Court has already addressed the matter of food truck design and noted its lack of relevance. See, supra at 18. Similarly, Dane has failed to identify any experts that would testify favorably about the brake light, tires, bleeding the brakes, engine braking, the parking brake, the power steering fluid — all of which have been addressed previously herein.

His remaining two allegations concern Sarah Dewes, who testified, and the Fire Marshall's character testimony. Dewes testimony at trial consisted mostly of describing what occurred after the crash and how long it took for emergency personnel to arrive. Her testimony was not disputed. It is also not disputed that the rescue personnel needed to remove a 22,000-pound bus before they could get to the final victim. The Supreme Court of Virginia found that the record established it took three hours after the crash to free the victim. (VSCT R. at 1467). Dane has not alleged a credible claim of a deficient performance or prejudice. See Bassette, 915 F.2d at 940-41; see also supra at note 14.

The state habeas court dismissed the allegation about the Fire Marshall finding that

> [t]o the extent petitioner is suggesting counsel should have called the Marshall to testify regarding his decision to award petitioner "Hometown Hero" for his charity work, counsel could reasonably have determined such character evidence would have been inadmissible at trial, since whether petitioner performed charity work was not relevant to whether he committed involuntary manslaughter by continuing to drive a 22,000-pound bus even after he noticed that something "didn't feel right" with [the] brakes. See Gardner v. Commonwealth, 288 Va. 44, 50 ( 2014 ) (explaining character evidence is only admissible in a criminal trial to prove a pertinent character trait relevant in a case). Petitioner has also failed to explain why the fire inspection was relevant or to show that any inspection or that any testimony in that regard would have been admissible.

28

(VSCT R. at 1477). The state habeas court's dismissal of the allegation, as well as the other allegations in Claim 7, for failing to state a claim under either prong of <u>Strickland v. Washington</u>, was not contrary to or an unreasonable application of federal law, and Claim 7 will be dismissed.

*H. Claim 8*

In Claim 8, Dane alleges he was denied effective assistance of counsel because counsel failed to request that juror Emily Belcher be removed from the jury after she informed the court on the second day of trial that her son's bus driver was a prosecution witness. Dane asserts Belcher was biased, would give more weight to the bus driver's testimony, and tainted the jury. In state habeas the spring court of Virginia dismissed this claim finding Dane had failed under both prongs of <u>Strickland v. Washington</u>.

> The record ... demonstrates that on the second day of trial, Belcher informed the court by written note that her son told her he saw his bus driver on television being interviewed about the trial and crash. Belcher then realized her son's bus driver was Charity Dokos, who testified that, just prior to the crash, petitioner drove past her stop bus while children were disembarking, despite that the red warning lights and stop signs on the bus were activated. The trial judge shared the note with the attorneys and indicated he did not think there was a problem. Defense counsel asked the court to question Belcher to ensure her son had not discussed any of Dokos' testimony or facts of the case with her.

> Upon questioning, Belcher stated her son did not tell her anything that Dokos said on television, just that he saw his bus driver on television. Belcher explained she had never even seen her son's bus driver because he was old enough to walk the bus stop by himself. Commonwealth asked Belcher if knowing Dokos was her son's bus driver would impact her deliberations or make her wait Dokos' testimony more favorably, and Belcher responded that it would not.

> This Court's "precedent is of long standing that a venireman will not be excluded from the jury if that person 'stands in different in the cause'" ... A juror's relationship with a witness or attorney in a case does not automatically disqualify a potential juror from being fair and impartial.... This Court has also held that "mere exposure to media coverage does not automatically disqualify a potential juror as long as that individual can still fairly and impartially weigh the evidence presented at trial." ... Based upon Belcher's responses to the court's questions, counsel could have reasonably determined any motion to remove Belcher from

the jury would have been unsuccessful. Counsel is not ineffective for making a
futile motion.

(VSCT R. at 1478-79).

To maintain a claim that trial counsel rendered ineffective assistance by failing to strike a
biased juror, the defendant "must show that the juror was actually biased against him." Hughes v.
United States, 258 F.3d 453, 458 (6th Cir. 2001) (quoting Goeders v. Hundley, 59 F.3d 73, 75
(8th Cir. 1995)). "The relevant question is 'did [the] juror swear that he could set aside any
opinion he might hold and decide the case on the evidence, and should the juror's protestation of
impartiality have been believed.'" Foley v. Parker, 488 F.3d 377, 387 (6th Cir. 2007) (quoting
Patton v. Yount, 467 U.S. 1025, 1036 (1984)); see Tinsley v. Million, 399 F.3d 796, 806 (6th
Cir. 2005) (actual bias negated because juror responded to a specific question during voir dire
that he could fairly try the case). The Fourth Circuit has also observed that a finding of implied
bias is appropriate only "where the relationship between a prospective juror and some aspect of
the litigation is such that it is highly unlikely that the average person could remain impartial in
his deliberations under the circumstances." Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988).
Examples of such relationships include employer/employee relationships, close relatives
involved in the litigation, and a witness to (or individual somehow involved in) the criminal
transaction. Fitzgerald v. Greene, 150 F.3d 357, 364 (4th Cir. 1998); see also Treesh v. Bagley,
612 F.3d 424, 437 (6th Cir. 2010) (counsel not ineffective for failing to strike a juror for cause
where the juror previously was in a paralegal course taught by the prosecutor because the record
did not demonstrate implied bias and the voir dire did not establish the two had a close
relationship and the juror swore she could be impartial).

Here, the voir dire established no relationship between the juror and the witness —
although the witness was her son's bus driver, the juror had never even seen the witness before.

30

The juror only learned of any connection when her son told her that he had seen his bus driver on television. Further, when asked if she could remain impartial the juror stated she could. The Supreme Court of Virginia's dismissal of the claim was not an unreasonable application of federal law, or an unreasonable determination of the facts and Claim 8 will be dismissed.

> *I. Claim 9*

In Claim 9, Dane alleges his attorney was ineffective because he failed to voir dire deputies Russell or Petrakos, and that each testified outside of his area of expertise. When he raised this claim in state court, Dane's allegations were wholly conclusory and provided no specifics. In dismissing the claim, the Supreme Court of Virginia found that Dane had failed to identify any specific testimony that was objectionable or outside the scope of either deputy's expertise. The court concluded Dane had failed to demonstrate his counsels' performance was deficient or establish prejudice. (VSCT R. at 1479). The Supreme Court of Virginia did not act unreasonably in dismissing Dane's claim because of its lack of specificity. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (a habeas petition "is expected to state facts that point to a real possibility of constitutional error," and "vague and conclusory allegations" are not entitled to relief and are subject to summary dismissal) (citations omitted). Claim 9 will be dismissed.

### IV. Petitioner's Pending Motions

As part of his response to the motion to dismiss, Dane has filed a motion for summary judgment [Dkt. No. 18, 19, 25], a motion to expand the record [Dkt. No. 20], and a motion for discovery to obtain evidence regarding Deputies Petrakos and Russell's training [Dkt. No. 22] and seeks to propound well over 100 interrogatories to each of his trial counsel. Each motion will be denied.

*A. Summary Judgment*

Summary judgment is appropriate only when the moving party has demonstrated that "no genuine issue of material fact remains for trial." Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011) (citation omitted). The Federal Rules of Civil Procedure, however, are applicable only to the extent they do not conflict with the habeas rules. See Rule 12 of the Rules Governing Section 2254 Cases.

> [A] court must view a summary judgment motion through "the prism of the substantive evidentiary burden." [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255,] 254 [(1986)]. Congress, through the AEDPA, has constricted both the nature and availability of habeas review. The Rules Governing Section 2254 Cases in the United States District Courts, along with traditional habeas practice, also allow for the summary dismissal of habeas claims. This Court, therefore, applies general summary judgment standards only insofar as they do not conflict with the language and intent of the AEDPA or other habeas law. See Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), overruled on other grounds by Tennard v. Dretke, 542 U.S. 274, (2004); Rule 1[2] of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

McGowen v. Thaler, 717 F. Supp. 2d 626, 639 (S.D. Tex. 2010), aff'd, 675 F.3d 482 (5th Cir. 2012). "Therefore, § 2254(e)(1) — which mandates that findings of fact made by a state court are presumed to be correct — overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), abrogated on other grounds by Tennard v. Dretke, 542 U.S. 274 (2004).

> Summary judgment in federal habeas is different than in the average civil case. See, e.g., Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), abrogated on other grounds by Tennard v. Dretke, 542 U.S. 274 (2004) ("[Section] 2254(e)(1) – which mandates that findings of fact made by a state court are 'presumed to be correct' – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless [the petitioner] can 'rebut [ ] the presumption of correctness by clear

and convincing evidence' as to the state court's findings of fact, they must be
accepted as correct." (third alteration in original)).

Torres v. Thaler, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). In the context of habeas review, a

state court's determination of a factual issue is presumed correct. 28 U.S.C. § 2254(e)(1); Teti v.

Bender, 507 F.3d 50, 58 (1st Cir. 2007); Proctor v. Cockrell, 283 F.3d 726, 729-30 (5th Cir.

2002).

Dane has not overcome the presumption of correctness. In addition, even without

AEDPA deference, it is plain from the record that the non-moving party (the respondent)

disputes the facts. Dane's motion for summary judgment will be denied.[18]

*B. Expansion of the Record*

The decision to expand the record is committed to the discretion of this Court. See Ford

v. Seabold, 841 F.2d 677, 691 (6th Cir. 1988). The requirements for expansion of the record are

summarized as follows:

> [a] petitioner … must meet the same conditions set forth in 28 U.S.C. §
> 2254(e)(2) for obtaining an evidentiary hearing. See Holland v. Jackson, 542 U.S.
> 649, 652-53 (2004); Ward v. Hall, 592 F.3d 1144, 1162-63 (11th Cir. 2010)
> (concluding that habeas petitioner "must comply with § 2254(e)(2) in order to
> expand the record under Rule 7"); Cooper-Smith v. Palmateer, 397 F.3d 1236,
> 1241-42 (9th Cir. 2005) (noting that a petitioner "must comply with § 2254(e)(2)

---

[18] To the extent Dane, in the alternative, seeks an evidentiary hearing — that motion is denied as well. As noted
herein, there is no need for a hearing on any of Dane's claims because the state court's dismissal of each claim was
not an unreasonable application of federal law, or an unreasonable determination of the facts. See Bennett v.
Angelone, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he
"add[ed] nothing 'additional' to the factual mix already before the district court"); see also supra at 7-8 (discussing
Pinholster and need for facts to be exhausted in state proceedings). As a result, the Court finds that an evidentiary
hearing is not required because the facts in the existing record are sufficient to resolve the legal issues raised. See,
e.g., Rule 8 of the Rules Governing Section 2254 Cases; Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996).

Dane also seeks appointment of counsel, but he has no right to counsel in seeking habeas corpus relief in federal
court. See McCleskey v. Zant, 499 U.S. 467, 495 (1991); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).
Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18
U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." Whisenant v.
Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Dane has presented no exceptional circumstances. Further, appointment of
counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary
hearing. See Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). The claims before the
Court do not require discovery and concern historical matters based upon the record and do not require a hearing.
The motion for appointment of counsel will be denied.

in order to expand the record under Rule 7"), overruled on other grounds by Daire
v. Lattimore, 812 F.3d 766 (9th Cir. 2016); Boyko v. Parke, 259 F.3d 781, 790
(7th Cir. 2001) ("When expansion of the record is used to achieve the same end as
an evidentiary hearing, the petitioner ought to be subject to the same constraints
that would be imposed if he had sought an evidentiary hearing." (citing McNair v.
Haley, 97 F. Supp. 2d 1270, 1286 (M.D. Ala. 2000))). Section 2254(e)(2) states:

> *If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless
> the applicant shows that—*
>
>> (A) the claim relies on—
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on
>>> collateral review by the Supreme Court, that was previously
>>> unavailable; or
>>>
>>> (ii) *a factual predicate that could not have been previously discovered
>>> through the exercise of due diligence*; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear
>> and convincing evidence that but for constitutional error, no reasonable
>> factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Therefore, in the context of Rule 7, a petitioner "must
show that *the evidence he now seeks to add to the federal habeas record was
before the state court when it adjudicated his claim or that he made diligent
efforts to put such evidence before the state court*." Harden v. Branker, No.
3:06cv240, 2010 U.S. Dist. LEXIS 100880 at *3 (W.D.N.C. Sept. 7, 2010)
(citations omitted). Alternatively, the petitioner "must show that the evidence he
is seeking to add could not have been discovered previously through due diligence
and that the evidence clearly and convincingly establishes that but for
constitutional error, no reasonable factfinder would have found him guilty." Id.
(citing Williams[ v. Taylor], 529 U.S. [420,] 430-31[2000]).

Sterling Lacy House v. Clarke, No. 3:16cv238, 2017 U.S. Dist. LEXIS 36562, *20-22 (E.D. Va.

Mar. 14, 2017) (emphasis added); see also Bradshaw v. Richey, 546 U.S. 74, 79 (2005) (holding

federal appellate court erred when it relied on evidence that was not properly presented to the

state courts without first determining if the habeas petitioner had met the § 2254(e)(2) criteria).

Dane's motion to expand the record seeks a transcript of the digital recording of Dane's

interview with Detective Grimsley because Dane insists he did not tell Grimsley the brakes felt

"spongy." [Dkt. No. 20 at 1-2]. As noted above, the digital recording is in the trial record and,

contrary to Dane's assertion, Dane told Grimsley the brakes felt "spongy" as he was travelling

through Middleburg. (Ex. No. 8, 5:26 though 5:27). Further, Dane was present when the recording was played at trial. A transcription of the recording is not necessary. The motion to expand the record [Dkt. No. 20] will be denied.

    *C. Discovery*

    Dane's motion for leave to conduct discovery does not address the limitations placed upon federal review by AEDPA and seeks leave to propound over 100 interrogatories to each of his trial counsel.[19] However,

> Pinholster's holding limits review under § 2254(d)(1) "to the record that was before the state court that adjudicated the claim on the merits" because the language of the statute is "backward-looking" and "requires an examination of the state-court decision at the time it was made." [563 U.S. at 182]. See also Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("[O]ur § 2254(d)(1) review is generally confined to the record that was before the state [] court.").

Hash v. Johnson, 845 F. Supp. 2d 711, 725 (W.D. Va. 2012); see also Jackson v. Kelly, 650 F.3d 477, 492 (4th Cir. 2011) ("when a habeas petitioner's claim has been adjudicated on the merits in state court, a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing.") (citing Pinholster, 563 U.S. at 182-83).

    Here, the Court has reviewed the rulings of the Supreme Court of Virginia and found that they are not contrary to or an unreasonable application of federal law. Accordingly, the motion for discovery will be denied. See Caudill v. Conover, 871 F. Supp. 2d 639, 645 (noting that if Pinholster limited a district court from considering anything beyond the state-court record permitting discovery to acquire new evidence would be futile and a waste of judicial resources if the court cannot consider that evidence in conducting § 2254(d)(1) review); see also

---

[19] Several of the interrogatories seek evidence that was introduced at trial, such as whether there was a digital recording and if the word "spongy" was used to describe the brakes by Dane. As noted herein, Deputy Grimsley interviewed Dane at the hospital and Dane used the word "spongy" to describe the brakes while he was travelling through Middleburg. The digital recording was also played at trial and introduced into evidence as Exhibit No. 8.

Runningeagle v. Ryan, 686 F.3d 758, 773-74 (9th Cir. 2012) (holding that "[r]egardless of whether [the petitioner] acted diligently, however, or of whether he was entitled to a hearing in state court, he is not entitled to an evidentiary hearing or *additional discovery* in federal court" under Pinholster) (emphasis added).[20]

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 10] is granted, the motion for summary judgment or in the alternative an evidentiary hearing [Dkt. No. 18] will be denied, the motion to expand the record [Dkt. 20] will be denied, the motion for discovery [Dkt. No. 22] will be denied, his motion for appointment of counsel will be denied, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[21]

March 9, 2022

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

---

[20] To the extent Dane seeks to rely on his affidavits submitted in support of his motion for summary judgment, those affidavits are barred from consideration under Pinholster. See also Jackson, 650 F.3d at 492 ("when a habeas petitioner's claim has been adjudicated on the merits in state court, a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing."). Dane's motions appear to be an attempt to cure the inadequacies of his claims identified in state habeas, but state habeas is not a dry run before filing a federal habeas. AEDPA was enacted to "further the principles of comity, finality, and federalism," Williams v. Taylor, 529 U.S. 420, 436 (2000), by ensuring that state proceedings remain "the 'main event' ... rather than a 'tryout on the road' for ... the determinative federal habeas hearing." Wainwright v. Sykes, 433 U.S. 72, 90 (1977); see Jamerson v. Runnels, 713 F.3d 1218, 1226 (9th Cir. 2013) (observing in Pinholster "the Supreme Court was concerned with preventing 'habeas-by-sandbagging' and with promoting comity between state and federal courts by ensuring that the state's consideration of a petitioner's claims were the 'main event' rather than a 'tryout on the road' to federal court.") (citation omitted).

[21] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.